## JEREMIAH CARPENTER, PLAINTIFF IN ERROR *v.* THE PROVIDENCE WASHINGTON INSURANCE COMPANY, DEFENDANTS IN ERROR.

Action on a policy of insurance on the "Glenco Cotton Factory," against loss or damage by fire. The policy was dated the 27th day of September, 1838, and was to endure for one year. The policy contained a clause by which it was stipulated by the assured, that if any other insurance on the property had been made, and had not been notified to the assurers, and mentioned in or endorsed on the policy, the insurance should be void; and if afterwards any insurance should be made on the property, and the assured should not give notice of the same to the assurers, and have the same endorsed on the policy, or otherwise acknowledged by the assured in writing, the policy should cease; and in case any other insurance on the property, prior or subsequent to this policy should be made, the assured should not, in case of loss, be entitled to recover more than the portion of the loss should bear to the whole amount insured on the property; the interest of the assured in the property not to be assignable, unless by consent of the assurers, manifested in writing; and if any sale or transfer of the property without such consent is made, the policy to be void and of no effect. On all the policies of insurance made by the insurance company, there was a printed notice of the conditions on which the insurance was made. The declaration alleged that Carpenter was the owner of the property insured, and was interested in the same to the whole amount insured by the policy; and that the property had been destroyed by fire. The facts of the case showed that the property had been mortgaged for a part of the purchase-money, and the policy of insurance was held for the benefit of the mortgagor. Another insurance was made by another insurance company, but this was not communicated in writing to the Providence Washington Insurance Company; nor was the same assented to by them, nor was a memorandum thereof made on the policy. By the Court:

No doubt can exist that the mortgagor and the mortgagee may each separately insure his own distinct interest in property against loss by fire. But there is this important distinction between the cases; that where the mortgagee insures solely on his own account, it is but an insurance of his debt; and if his debt is afterwards paid or extinguished, the policy ceases from that time to have any operation; and even if the premises insured are subsequently destroyed by fire, he has no right to recover for the loss, for he sustains no damage thereby; neither can the mortgagor take advantage of the policy, for he has no interest whatsoever therein: on the other hand, if the premises are destroyed by fire before any payment or extinguishment of the mortgage, the underwriters are bound to pay the amount of the debt to the mortgagee, if it does not exceed the insurance. Upon such payment, the underwriters are entitled to an assignment of the debt from the mortgagee, and may recover the same from the mortgagor. The payment of the insurance is not a discharge of the debt, but only changes the creditor.

When the insurance is made by the mortgagor, he will, notwithstanding the mortgage or other encumbrance, be entitled to recover the full amount of his loss, not exceeding the insurance, since the whole loss is his own. The mortgagee can only insure to

[Carpenter *v.* The Providence Washington Insurance Company.]

the amount of his debt; whereas the mortgagor can insure to the full value of the property, notwithstanding any encumbrances thereon.

An assignment of a policy by the assured only covers such interest in the premises as he may have had at the time of the insurance, and at the time of the loss. If a loss takes place after the policy has been assigned, the assignee alone is entitled to recover. The rights of the assignee under the policy cannot be more extensive than the rights of the assignor. Cited the Columbia Insurance Company *v.* Lawrence, 10 Peters, 507, 512; 2 Peters, 25, 49.

Policies of insurance against fire are not deemed in their nature incidents to the property insured, but they are mere special agreements with the person insuring against such loss or damage as they may sustain; and not the loss or damage that any other person having an interest as grantee, or mortgagee, or creditor, or otherwise, may sustain by reason of the subsequent destruction by fire.

The public have an interest in maintaining the validity of the clauses in a policy of insurance against fire. They have a tendency to keep premiums down to the lowest rates, and to uphold institutions of this sort, so essential to the present state of the country for the protection of the vast interests embarked in manufactures, and on consignments of goods in warehouses.

Questions on a policy of insurance are of general commercial law, and depend upon the construction of a contract of insurance, which is by no means local in its character, or regulated by any local policy or customs.

The Circuit Court charged the jury, that at law, whatever might be the case in equity, mere parol notice of another insurance on the same property was not a compliance with the terms of the policy; and that it was necessary in the case of such prior policy, that the same should not only be notified to the company, but should be mentioned in or endorsed on the policy; otherwise the insurance was to be void and of no effect. Held, that this instruction of the Circuit Court was correct. It never can be properly said that the stipulation in the policy is complied with, when there has been no such mention or endorsement as it positively requires; without which it declares that the policy shall be void and of no effect.

IN error to the Circuit Court of the United States for the district of Rhode Island.

The case was argued by Mr. Whipple, for the plaintiff in error; and by Mr. Green and Mr. Sergeant, for the defendants in error.

Mr. Justice STORY delivered the opinion of the Court.

This is a writ of error to the Circuit Court for the district of Rhode Island. The original action was brought by Carpenter, the plaintiff in error, against the Providence Washington Insurance Company, the defendants in error, upon a policy of insurance underwritten by the insurance company of fifteen thousand dollars, "on the Glenco Cotton Factory in the state of New York,"

owned by Carpenter, against loss or damage by fire. The policy was dated on the 27th of September, 1838, and was to endure for one year. Among other clauses in the policy are the following: "And provided further, that in case the insured shall have already any other insurance on the property hereby insured, not notified to this corporation, and mentioned in or endorsed upon this policy, then this insurance shall be void and of no effect." "And if the said insured or his assigns shall hereafter make any other insurance on the same property, and shall not with all reasonable diligence give notice thereof to this corporation, and have the same endorsed on this instrument, or otherwise acknowledged by them in writing, this policy shall cease and be of no further effect. And in case of any other insurance upon the property hereby insured, whether prior or subsequent to the date of this policy, the insured shall not in case of loss or damage be entitled to demand or recover on this policy any greater portion of the loss or damage sustained than the amount hereby insured shall bear to the whole amount insured on the said property." " The interest of the insured in this policy is not assignable, unless by consent of this corporation, manifested in writing; and in case of any transfer or termination of the interest of the insured, either by sale or otherwise, without such consent, this policy shall henceforth be void and of no effect." Annexed to the policy are the proposals and conditions on which the policy is asserted to be made, and among them is the following: " Notice of all previous insurances upon property insured by this company shall be given to them, and endorsed on the policy, or otherwise acknowledged by the company in writing, at or before the time of their making insurance thereon, otherwise the policy made by this company shall be of no effect."

The declaration averred that during the continuance of the policy he, Carpenter, was the owner of the property by the policy insured, and was interested in said property to the whole amount so insured by the company; and that on the 9th of April, 1839, the factory was totally destroyed by fire, of which the company had due notice and proof. The cause came on for trial upon the general issue, and a verdict was found for the defendants. The plaintiff took a bill of exceptions to certain instructions refused, and other instructions given by the

Court in certain matters of law arising out of the facts in proof at the trial; and judgment having been given upon the verdict for the defendants, the present writ of error has been brought to ascertain the validity of these exceptions.

The facts which were in proof at the trial were very complicated; but those which are material to the present inquiry will be, as briefly as they may be, here stated. The premises were originally owned in equal moieties by Egbert and Epenetus Reed. In June, 1835, Epenetus Reed conveyed his moiety to H. M. Wheeler, who gave a bond and mortgage on the premises to secure eight thousand dollars of the purchase-money to Epenetus Reed. On the 17th of October, 1836, Egbert Reed sold his moiety of the premises to Samuel G. Wheeler, and the latter thereupon gave a bond and mortgage for the sum of ten thousand dollars (the purchase-money) to Epenetus Reed; and on the same day, he, Wheeler, made an additional agreement under seal with Epenetus Reed, by which he covenanted that he would effect a policy of insurance upon the property in the name of himself, or of himself and Henry M. Wheeler, for the sum of at least ten thousand dollars, and assign the same to him, Reed, as collateral security to the said last bond and mortgage, and would annually renew the policy, or effect a new one, and keep each assigned to Reed as security, in such way and manner as that the said property shall be insured for at least the sum of ten thousand dollars, and the policy held by him as collateral security as aforesaid; and if he neglected so to insure and assign for the space of ten days, then, that Reed might do the same at the expense of Wheeler, and add the premium which he might be compelled to pay with interest thereon to his said bond and mortgage, and to collect the same therewith, or that Wheeler would pay the same to him in such other way as he might desire.

From the 17th of October, 1836, to the 6th of December, 1837, Henry M. Wheeler, and Samuel G. Wheeler continued to own the factory in equal moieties, and transacted business under the firm of Henry M. Wheeler and Company. On that day Samuel G. Wheeler sold his moiety to Jeremiah Carpenter. On the 18th of April, 1838, Henry M. Wheeler sold and conveyed his moiety to Carpenter, who thus became the sole owner of the entire property. The last conveyance declared the property subject to a

mortgage on the premises from Henry M. Wheeler and wife, dated in June, 1835, to Epenetus Reed, on which there was then due six thousand dollars, which Carpenter assumed to pay. There had been a prior policy on the premises in the Washington Insurance office, which, upon Carpenter's becoming the sole owner, the company agreed to continue for account of Carpenter, and in case of loss, the amount to be paid to him. That policy expired on the 27th of September, 1838, the day on which the policy, upon which the present suit is brought, was effected.

It is proper farther to state, that other policies on the same factory had been effected and renewed from time to time, from December 12th, 1836, for the benefit of the successive owners thereof, by another insurance company in Providence called the American Insurance Company; and among these was a policy effected by way of renewal, on the 14th of December, 1837, in the name of Henry M. Wheeler and Company, for six thousand dollars, for the benefit of Henry M. Wheeler and Carpenter, (who were then the joint owners thereof) payable in case of loss to Epenetus Reed. The sale by Henry M. Wheeler to Carpenter, on the 18th of April, 1838, of his moiety having been notified to the American Insurance Company, the latter agreed to the assignment; and the policy thenceforth became a policy for Carpenter, payable in case of loss to Epenetus Reed. And on the 23d of May, 1838, Carpenter transferred all his interest in the policy to Epenetus Reed. The policy thus effected on the 14th of December, 1837, was (as the Washington Insurance Company assert) not notified to them at the time of effecting the policy made on the 27th of September following, and declared upon in the present suit; nor was the same ever mentioned in, or endorsed upon the same policy; and upon this account, the company insist that the present policy is, pursuant to the stipulations contained therein, utterly void.

Subsequently, viz., on the 11th of December, 1838, the American Insurance Company renewed the policy of 14th of December, 1837, for Carpenter; and at his request, for one year. This renewed policy was never notified to the Washington Insurance Company, nor acknowledged by them in writing; nor does it appear ever to have been actually assigned to Epenetus Reed, down to the period of the loss of the factory by fire. On this account also the Washington Insurance Company insist that their

policy of the previous 27th of September, 1838, is, according to the stipulations therein contained, utterly void.

It seems to have been admitted, although not directly proved, that a suit was brought upon the policy of the 14th of December, 1837, at the American Insurance office, after the loss, by Carpenter, as trustee of or for the benefit of Reed, for the amount of the six thousand dollars insured thereby; and that at the November term, 1839, of the Circuit Court, the company set up as a defence, that there was a material misrepresentation of the cost and value of the property in the factory insured made to them at the time of the original insurance; and it being intimated by the Court, that if such was the fact it would avoid the policy; the plaintiff acquiesced in that decision, and discontinued or withdrew the action before verdict.

The instructions prayed and refused, and also the instructions actually given by the Court, are fully set forth in the record. It does not seem important to the opinion, which we are to pronounce, to recite them at large, in totidem verbis; since the points on which they turn admit of a simple and exact exposition.

The first instruction asked the Court, in effect, to say that the original policy of the American Insurance Company, made in December, 1836, and the several renewals thereof, although made in the name of the Wheelers, (the mortgagors,) being in fact for the use and benefit of Epenetus Reed, the mortgagee, were for all substantial purposes the policy of Reed, and could never inure to the benefit of the Wheelers, or of Carpenter; and that neither the Wheelers nor Carpenter had any such interest therein as rendered it incumbent on them to give any notice of its existence to the Washington Insurance Company; and that it was to all intents and purposes as if Reed had effected the said policy in his own name upon his specific interest as mortgagee. This instruction the Court refused to give; and on the contrary, instructed the jury, that as by the memorandum made on that policy on the 14th of December, 1837, the policy was by the consent of all the parties interested therein, and of Carpenter, to be for the benefit of Carpenter, he, Carpenter, became interested therein legally or equitably; and that notwithstanding the assignment thereof by the Wheelers to Carpenter, and of Carpenter to Reed, the policy and the renewals thereof ought to have been notified to the

Washington Insurance Company, at the time when the policy declared on was underwritten, if the policy was then a subsisting policy, and was so treated by Carpenter and the American Insurance Company; and Carpenter had a legal or equitable interest therein, and was entitled to the benefit thereof.

The question then is here broadly presented, whether the policy of the American Insurance Company is, under all the circumstances, to be treated as a policy exclusively for Reed, the mortgagee, or whether it is to be treated as a policy on the property of, and for the benefit of, the mortgagors.   No doubt can exist, that the mortgagor and the mortgagee may each separately insure his own distinct interest in the property.   But there is this important distinction between the cases, that where the mortgagee insures solely on his own account, it is but an insurance of his debt; and if his debt is afterwards paid or extinguished, the policy ceases from that time to have any operation; and even if the premises insured are subsequently destroyed by fire, he has no right to recover for the loss, for he sustains no damage thereby; neither can the mortgagor take advantage of the policy, for he has no interest whatsoever therein.   On the other hand, if the premises are destroyed by fire before any payment or extinguishment of the mortgage, the underwriters are bound to pay the amount of the debt to the mortgagee, if it does not exceed the insurance.   But, then, upon such payment, the underwriters are entitled to an assignment of the debt from the mortgagee, and may recover the same amount from the mortgagor, either at law or in equity, according to circumstances; for the payment of the insurance by the underwriters does not, in such a case, discharge the mortgagor from the debt but only changes the creditor.

Far different is the case where an insurance is made by the mortgagor on the premises on his own account; for, notwithstanding any mortgage or other encumbrance upon the premises, he will be entitled to recover the full amount of his loss, not exceeding the insurance; since the whole loss is his own, and he remains personally liable to the mortgagee or other encumbrancer, for the full amount of the debt or encumbrance.

These principles we take to be unquestionable, and the necessary result of the doctrines of law applicable to insurances by the mortgagor and the mortgagee.  If, then, a mortgagor procures

a policy on the property against fire, and he afterwards assigns the policy to the mortgagee with the consent of the underwriters, (if that is required by the contract to give it validity,) as collateral security, that assignment operates solely as an equitable transfer of the policy so as to enable the mortgagee to recover the amount due in case of loss; but it does not displace the interest of the mortgagor in the premises insured. On the contrary, the insurance is still his insurance, and on his property, and for his account. And so essential is this, that if the mortgagor should transfer the property to a third person, without the consent of the underwriters, so as to divest all his interest therein; and then a loss should occur, no recovery can be had therefore against the underwriters, because the assured has ceased to have any interest therein, and the purchaser has no right or interest in the policy. Another essential difference between the case of a mortgagor and that of a mortgagee (which has been already hinted at) is, that the latter can insure for himself at most only to the extent of his debt, whereas the mortgagor can insure to the full value of the property, notwithstanding any encumbrances thereon for the reasons already stated.

Some of these principles are completely illustrated by the terms of this very policy of the American Insurance Company; and the like clauses are to be found in the policies of the Washington Insurance Company, now under consideration. Thus, although it is expressly provided, "that the assured may assign this policy to Epenetus Reed;" yet it is at the same time provided, that " the interest of the assured in this policy is not assignable unless by the consent of this corporation, manifested in writing; and in case of any transfer or termination of the interest of the insured, either by sale or otherwise, without such consent, this policy shall from thenceforth be void and of no effect." Now, the interest here last spoken of, manifestly, is the interest of the owner in the premises insured, and not merely his interest in the policy.

But independently of any special clauses of this sort, it is clear, both upon principle a' authority, that an assignment of a policy by the insured only covers such interest in the premises as he may have at the time of the insurance, and at the time of the loss. It is the property of the insured, and his alone that is designed to be covered; and when he parts with his title to the

property, he can sustain no future loss or damage by fire, but the loss, if any, must be that of his grantee. The rights of the assignee cannot be more extensive under the policy than the rights of the assignor; and as to the grantee of the property, he can take nothing by the grant in the policy, since it is not in any just or legal sense attached to the property, or an incident thereto. This doctrine was laid down in very expressive terms by Lord Chancellor King, so long ago as in the case of Lynch v. Danzell, 4 Bro. Parl. Rep. 432, edit. Turb. 2 Marsh. Insur. b. 4, ch. 4, 803, which was an insurance against fire. "These policies," said he, "are not insurances of the specific things mentioned to be insured, nor do such insurances attach on the realty, or in any manner go with the same as incident thereto by any conveyance or assignment, but they are only special agreements with the persons insuring against such loss or damage as they may sustain. The party insured must have a property at the time of the loss or he can sustain no loss, and consequently can be entitled to no satisfaction." "These policies are not in their nature assignable, nor is the interest in them ever intended to be transferrable from one to another, without the express consent of the office." Now, this case is the stronger because it was a case where not only the policy but the premises had been assigned to the very parties who sought the benefit of the insurance. The same doctrine was asserted by Lord Hardwicke, in the case of The Sadlers' Company v. Badcock, 2 Atk. 554, where there had been an assignment of the policy, after the insured ceased to have any interest in the premises; upon that occasion Lord Hardwicke said, "I am of opinion [that] the insured should have an interest or property at the time of the insuring and at the time the fire happens." "The society are to make satisfaction in case of any loss by fire. To whom or for what loss are they to make satisfaction? Why, to the person insured, and for the loss he may have sustained; for it cannot properly be called insuring the thing, for there is no possibility of doing it, and therefore must mean insuring the person from damage;" and he cited with approbation the very language of Lord King, already stated in Lynch v. Danzell. The authority of these cases was fully recognised and acted upon by this Court in the case of The Columbia Insurance Company of Alexandria v. Lawrence, 10 Peters, 507, 512, where the

Court said, "We know of no principle of law or of equity, by which a mortgagee has a right to claim the benefit of a policy underwritten for the mortgagor, on the mortgaged premises, in case of a loss by fire. It is not attached or an incident to his mortgage. It is strictly a personal contract for the benefit of the mortgagor, to which the mortgagee has no more title than any other creditor."

For these reasons it is apparent that Epenetus Reed, as mortgagee, and merely in that character, can have no interest in or right to the policy in the American office, now under consideration. The insurance is not made by him, or in his name, or upon his account. The policy was originally made in December, 1836, for Henry M. Wheeler and Company who were then the owners of the factory; and by its very terms it is an insurance for them against loss or damage by fire. When the policy was renewed in December, 1837, it was so renewed for the benefit of Henry M. Wheeler and Jeremiah Carpenter, who had then become the joint owners thereof. When subsequently, in April, 1838, Carpenter became the sole owner of the premises, the company agreed to the transfer and assignment of the entirety to Carpenter, so that henceforth it became a policy upon his sole property, for his account and benefit; in the same manner and with the same legal effect as if the policy had been renewed in his own name.

But it is said that there is a clause in the original policy, and it is equally applicable to the renewals, "that the assured may assign this policy to Epenetus Reed." And the argument is, that this liberty to assign, when the assignment to Reed was actually executed, transferred the whole interest in the property insured, as well as in the policy, to Reed, and made the policy to all intents and purposes a policy for the sole benefit of Reed as mortgagee, as much as if the insurance had been made in his own name.

To this suggestion several answers may be made, each of which is equally fatal to the construction contended for. In the first place, although an assignment to Reed was authorized by the policy, it was never disclosed to the American Insurance Company for what purposes or objects the assignment was to be made, whether to Reed as trustee, or agent of the insured, or for

fugitive and temporary purposes, or as a security for debts, or whether it was designed to be absolute and uncoi. ional. Neither was it disclosed to the company that Reed was in point of fact a mortgagee; nor were the company requested to insure his interest, as mortgagee, or to make the insurance exclusively upon his interest and for his account. Now, as has been already seen, an insurance for a mortgagor, and one for a mortgagee, involve very different considerations, responsibilities, rights, and duties; and the company might well be willing to make an insurance upon the property on account of the mortgagors, when they might be unwilling to make any on account of the mortgagee; and it is clear, upon principle, that no policy can or ought to be deemed a policy exclusively upon the interest of the mortgagee, unless the company have notice that it is so designed, and they assent to it. A mortgage interest is without doubt an insurable interest; but then it is a special interest, and should be made known to the underwriters. Mr. Marshall, in his Treatise on Insurance against Fire, says, "It is not necessary, however, in all cases, in order to constitute an insurable interest, that the insured shall in every instance have the absolute and unqualified property of the effects insured. A trustee, a mortgagee, a reversioner, a factor, an agent, with the custody of goods to be sold upon commission, may insure; but with this caution, that the nature of the property be distinctly specified." 2 Marsh. Insur. b. 4, ch. 2, p. 789. This language was quoted with approbation by this Court in the case of The Columbia Insurance Company v. Lawrence, 2 Peters, 25, 49, and the reason for it is there given by the Court. "Generally speaking," said the Court, "insurances against fire are made in the confidence that the assured will use all the precautions to avoid the calamity insured against, which would be suggested by his interest The extent of his interest must always influence the underwriter in taking or rejecting the risk, and in estimating the premium. So far as it may influence him in these respects it ought to be communicated to him. Underwriters do not rely so much upon the principles, as on the interest of the assured; and it would seem, therefore, to be always material that they should know how far this interest is engaged in guarding the property from loss." Now, since there is no pretence to say, that the interest of Reed as mortgagee was disclosed

to the company, or that the company agreed to insure his interest as mortgagee, and that only; it would seem to follow, that the policy cannot be construed to operate in the manner propounded by the instruction prayed by the plaintiff.

In the next place the policy itself upon its very terms admits of no such interpretation; and indeed requires a different interpretation to give due effect to those terms. The policy, as has been already stated, is in the name of the owners, and for their account, and on their property. If it was designed solely for Reed, why was he not named, and he alone named as the insured? How can any Court be at liberty, without other explanatory words, to construe a policy made by A. in his own name, on his property, to be not a policy on his own interest, but on the interest of B. who is a stranger to the policy? The language of Lord King, and Lord Hardwicke, and of this Court, in the cases already cited, show conclusively that policies of this sort are not deemed in their nature incidents to the property insured, but that they are mere special agreements with the persons insuring against such loss or damage as they may sustain, and not the loss or damage that any other person having an interest, as grantee, or mortgagee, or creditor, or otherwise, may sustain, by reason of a subsequent destruction thereof by fire. It would seem, then, repugnant to the terms of this policy to construe it to be not what it purports to be, an insurance for the owner of the property, but an insurance for an undisclosed creditor or mortgagee. It would materially change the language, the objects, and the obligations of the parties thereto.

In the next place, it would, in our judgment, be inconsistent with the manifest intention, as well of the insured, as of Reed, to give it such an interpretation. The agreement between Samuel G. Wheeler and Reed, of the 17th of October, 1836, demonstrates, in the clearest manner, that the policy was to be effected by the Wheelers as owners, and to be assigned after it was effected by them to Reed, as collateral security for his bond and mortgage; and it was only upon their neglect to procure such insurance and assign the policy, that Reed was to be at liberty to do the same at their expense. The language of the instrument is, "I do hereby agree with Epenetus Reed, &c.; that I will effect a policy of insurance upon the said property in the name of myself, or of my-

[Carpenter *v.* The Providence Washington Insurance Company.]

self and Henry M. Wheeler, for the sum of at least ten thousand dollars, and assign the same to him as collateral security to said bond and mortgage; and that I will annually renew the said policy, or effect a new one, and keep each assigned to him as security, &c., and the policy held by him as collateral security; and if I neglect so to insure and assign for the space of ten days, then, that said Reed may do the same at my expense," &c.. Now, language more direct than this can scarcely be imagined to express the intentions of the parties, that the insurance was to be made in the name of the owners, upon their interest in the property, and for their account, and the policy to be assigned as collateral security to Reed. Not one word is said that the insurance was to be solely and exclusively for Reed, as mortgagee; for in such a case he would hold the policy as a principal, and not as a collateral security. It is obvious from the language also that Reed was not to be the absolute owner of the policy, as he would be if made for him exclusively as mortgagee, but he was to hold it as collateral security. If, then, the debt of Reed should be paid or extinguished in the whole or in part, would not the right of the owners correspondently attach to the policy? If the whole debt was paid, would they not be entitled to a re-assignment thereof? Yet, unless in such a case the policy attached to the property for their own account and benefit, the re-assignment would be a mere nullity. To us it seems beyond all reasonable doubt, that the policy under this agreement was designed by the parties to be on account of the owners and for their benefit, and that it was to be only collateral security to Reed to the extent of any interest he might have therein in case of loss by fire. In this view it operated as a security to the owners against the entire loss. In any other view, they would only change their creditors upon any loss, from Reed to the underwriters.

Besides, in point of fact, the policy must have its effect and operation from the time of its execution, and not otherwise. The language of the policy is, "that the assured may assign this policy to Epenetus Reed;" not that this policy shall now be for Epenetus Reed or on his interest. The owners, then, had an option, whether to assign or not. If they never had assigned the policy to Reed at all, and a loss had occurred, would not the loss have been payable to the owners? In point of fact, the policy, although

made on the 12th of December, 1836, was not assigned to Reed until the 21st of January, 1837. In whom did the interest then originally, and in the intermediate time, vest, under the policy? Clearly in the owners; for they and they only had any interest in the property or the policy until the assignment was made. The authorities all hold that the party insured must have an interest at the time of the making of the policy, as well as at the time of the loss; and if Reed had no interest upon which the policy would attach by its terms when the insurance was made, but acquired it afterwards, and the policy had been made upon his sole account, it would have been a mere nullity. The subsequent renewals were to the same effect, and for the same purposes and parties as the original policy. Carpenter, after he become sole owner, did not assign the policy to Reed until the 23d of May, 1838, more than five months after the renewal, and more than one month after the conveyance of the whole property to himself. Now, the question may be here again asked, whether if the loss had occurred before these assignments, a recovery upon the policy might not have been had by Carpenter, in his own name, and for his own account? We think that the question must be answered in the affirmative; and if so, then it demonstrates that the policy made in the name of the owners, was for their account and benefit; and payment only was, in case of loss, to be made to Reed.

For these reasons we are of opinion that the first instruction asked of the Court was rightly refused; and that the instruction given was entirely correct.

The second instruction asked, proceeds upon the ground that although the policy of the American Insurance Company, of the 6th of December, 1836, was good upon its face, yet if, in point of fact, it was procured by a material misrepresentation by the owners of the cost and value of the premises insured, it was to be deemed utterly null and void, and therefore as a null and void policy, notice thereof need not have been given to the Washington Insurance Company at the time of underwriting the policy declared on. The Court refused to give the instruction; and, on the contrary, instructed the jury that if the policy of the American Insurance Company was, at the time when that at the Washington Insurance office was made, treated by all the parties thereto as a subsisting

and valid policy, and had never, in fact, been avoided; but was still held by the assured as valid; then that notice thereof ought to have been given to the Washington Insurance Company, and if it was not, the policy declared on was void.

We are of opinion that the instruction, as asked, was properly refused; and that given was correct. It is not true, that because a policy is procured by misrepresentation of material facts, it is therefore to be treated, in the sense of the law, as utterly void ab initio. It is merely voidable, and may be avoided by the underwriters upon due proof of the facts; but until so avoided, it must be treated for all practical purposes as a subsisting policy. In this very case the policy has never, to this very day, been avoided, or surrendered to the company. It is still held by the assured; and he may, if he pleases, bring an action thereon to-morrow; and unless the underwriters should at the trial prove the misrepresentation, he will be entitled to recover. But the question is not how the policy may now be treated by the parties, but how was it treated by them at the time when the policy declared on was made. It was then a subsisting policy, treated by all parties as valid, and supposed by the underwriters to be so. The misrepresentation does not then seem to have been known to the American Insurance Company. It was an extrinsic fact; and if known to the American Insurance Company, it certainly was not known to the Washington Insurance Company. How were the latter to arrive at any knowledge of the facts of misrepresentation; and how were they to avail themselves of the fact, if the American Insurance Company should not choose to insist upon it? Nor is it immaterial in the present case, as was suggested at the bar, that the present plaintiff now seeks to avail himself of his own misrepresentation, or that of those under whom he claims, to protect himself against his own laches in not giving notice of the policy to the underwriters. And it may well be doubted whether a party to a policy can be allowed to set up his own misrepresentations to avoid the obligations deducible from his own contract. Be this as it may, it is in our judgment free from all reasonable doubt, that notice of a voidable policy must be given to the underwriters; for such a case falls within the words and the meaning of the stipulations in the policy. It is a prior policy, and it has a legal existence until avoided.

2 υ 2

Indeed, we are not prepared to say that the Court might not have gone farther, and have held that a policy—existing and in the hands of the insured, and not utterly void upon its very face, without any reference whatever to any extrinsic facts—should have been notified to the underwriters; even although by proofs, afforded by such extrinsic facts, it might be held in its very origin and concoction a nullity. And this leads us to say a few words upon the nature and importance and sound policy of the clauses in fire policies, respecting notice of prior and subsequent policies. They are designed to enable the underwriters, who are almost necessarily ignorant of many facts which might materially affect their rights and interests, to judge whether they ought to insure at all, or for what premium; and to ascertain whether there still remains any such substantial interest of the insured in the premises insured, as will guaranty on his part, vigilance, care, and strenuous exertions to preserve the property. To quote the language of this Court in the passage already cited, the underwriters do not rely so much upon the principles as upon the interest of the assured. Besides, in these policies there is an express provision that in cases of any prior or subsequent insurances, the underwriters are to be liable only for a rateable proportion of the loss or damage as the amount insured by them bears to the whole amount insured thereon. So that it constitutes a very important ingredient in ascertaining the amount which they are liable to contribute towards any loss; and whether there be any other insurance or not upon the property, is a fact perfectly known to the insured, and not easily or ordinarily within the means of knowledge of the underwriters. The public, too, have an interest in maintaining the validity of these clauses, and giving them full effect and operation. They have a tendency to keep premiums down to the lowest rates, and to uphold institutions of this sort, so essential in the present state of our country for the protection of the vast interests embarked in manufactures, and on consignments of goods in warehouses. If these clauses are to be construed with a close and scrutinizing jealousy, when they may be complied with in all cases by ordinary good faith, and ordinary diligence on the part of the insured, the effect will be to discourage the establishment of fire insurance companies, or to restrict their operations to cases where the parties and the premises are

within the personal observation and knowledge of the under-writers. Such a course would necessarily have a tendency to enhance premiums; and to make it difficult to obtain insurances where the parties live, or the property is situate, at a distance from the place where the insurance is sought.

But be these considerations as they may, we see no reason why, as these clauses are a known part of the stipulations of the policy, they ought not to receive a fair and reasonable interpretation according to their terms and obvious import. The insured has no right to complain, for he assents to comply with all the stipulations on his side, in order to entitle himself to the benefit of the contract, which upon reason or principle, he has no right to ask the Court to dispense with the performance of his own part of the agreement, and yet to bind the other party to obligations, which, but for those stipulations, would not have been entered into. We are then of opinion that there is no error in the second instruction. On the contrary, there is strong ground to contend that the stipulations in the policy as to notice of any prior and subsequent policies, were designed to apply to all cases of policies then existing in point of fact; without any inquiry into their original validity and effect, or whether they might be void or voidable.

We have not thought it necessary upon this occasion to go into an examination of the cases cited from the New York and Massachusetts Reports, either upon this last point, or upon the former point. The decisions in those cases are certainly open to some of the grave doubts and difficulties suggested at the bar, as to their true bearing and results. The circumstances, however, attending them, are distinguishable from those of the case now before us, and they certainly cannot be admitted to govern it. The questions under our consideration, are questions of general commercial law, and depend upon the construction of a contract of insurance, which is by no means local in its character, or regulated by any local policy or customs. Whatever respect, therefore, the decisions of state tribunals may have on such a subject, and they certainly are entitled to great respect, they cannot conclude the judgment of this Court. On the contrary, we are bound to interpret this instrument according to our own opinion of its true intent and objects, aided by all the lights which can be obtained from all ex-

ternal sources whatsoever; and if the result to which we have arrived differs from that of these learned state Courts, we may regret it, but it cannot be permitted to alter our judgment.

The third instruction prayed the Court to instruct the jury that if the Washington Insurance Company had notice, in fact, of the existence of the policy in the American office, that " was, in law, a compliance with the terms of the policy." The Court refused to give the instruction as prayed; but instructed the jury that, at law, whatever might be the case in equity, mere parol notice of such insurance was not, of itself, sufficient to comply with the requirements of the policy declared on; but that it was necessary, in case of any such prior policy, that the same should not only be notified to the company, but should be mentioned in or endorsed upon the policy; otherwise the insurance was to be void and of no effect. We think this instruction was perfectly correct. It merely expresses the very language and sense of the stipulation of the policy; and it can never be properly said that the stipulation in the policy is complied with, when there has been no such mention or endorsement as it positively requires; and without which it declares the policy shall henceforth be void and of no effect.

The fourth and last instruction given by the Court, stands upon the same considerations, as those already mentioned; and it would be a useless task to repeat them. If the other instructions given by the Court were correct, it is admitted that this cannot be deemed erroneous.

Upon the whole, our opinion is, that the judgment of the Circuit Court ought to be affirmed with costs.