GEORGE H. ADAMS & *al. versus* THE ROCKINGHAM MUTUAL
FIRE INSURANCE COMPANY.

In the charter of an insurance company it was enacted that, if the insured
should alienate the property, the policy should be void.

*Held,* an alienation had occurred when, upon his own application, he had
been decreed a bankrupt and his assignee in bankruptcy had been ap-
pointed.

*Held,* further, an alienation had occurred, when the insured, by an absolute
deed, had conveyed the property, although he received from his grantee
an unsealed agreement to re-convey upon the payment of a specified
sum.

ASSUMPSIT on a policy of insurance against fire.

At the trial, before SHEPLEY, C. J. the defendants submitted
to a default which is to be taken off and a nonsuit entered, if
the plaintiffs are not entitled to recover.

Several grounds of defence were set up.

In relation to one of them, the important facts were as fol-
lows : —

B. R. Dolloff and R. Leighton had been owners of a mill
and machinery, and had mortgaged the same.

They then procured insurance of said mill and machinery by
the policy now in suit, stating in their application, that the
property was " encumbered by a mortgage to the amount of
$1000 ;" the sum insured " to be paid, in case of loss, to the
mortgagee."

The insurance was for six years from July, 1841, " subject
to the provisions of the defendants' charter and by-laws," and
" payable in case of loss, to the mortgagee."  Dolloff and
Leighton were accepted as members of the company, and gave
their note for the premium.

In September, 1842, Dolloff mortgaged his interest in the
premises, to secure $400, and, in June, 1843, upon his own
request, was decreed a bankrupt.  His discharge was obtained
in February, 1847, soon after which, his assignee conveyed all
his interest in the premises.

Leighton, in 1842, conveyed his interest in the premises, by
an absolute deed, to one Tewksbury, taking back an agree-

ment for a re-conveyance, if in ten years he paid his debt to Tewksbury.

The property was consumed by fire in March, 1844.

This action is brought by one of the mortgagees and by the administrator of the estate of the other.

The twelfth section of the defendants' charter provides, " That when any house or other building shall be alienated by sale or otherwise, the policy shall thereupon be void."

The case was decided upon the fourth ground set up in defence, which was, that the policy had become void, because the property had been alienated by the insured.

*Leland,* for defendants.

Dolloff's interest had been alienated by his bankruptcy, and an alienation by one, was as effectual as by both, to defeat the policy. In admitting members, the company had reference to the character of applicants. If the alienation by one did not defeat the policy, members might be introduced against the consent of the company. But, in fact, Leighton had also alienated his interest; for he had given an absolute deed of the property.

*Eastman,* for plaintiffs.

Neither Dolloff nor Leighton had parted with all his interest. At the time of the fire, Dolloff's interest had not been conveyed by his assignee. He had not been discharged. The bankruptcy proceedings might have been stayed. His assets might have overpaid.

Leighton also had a remaining interest. On payment to Tewksbury, he was entitled, in equity, to a re-conveyance. If either Dolloff or Leighton retained any interest in the premises, the policy is in force. *Strong* v. *Manuf. Ins. Co.,* 10 Pick. 40 ; *Columbian Ins. Co.* v. *Lawrence,* 2 Pet. 25 ; *Wilson* v. *Hill,* 2 Metc. 71 ; *Carroll* v. *Boston Mutual Ins. Co.,* 8 Mass. 515 ; *Jackson* v. *Mass. Mutual Fire Ins.* Co., 18 Pick. 418 ; *Goden* v. *Mass. Fire and Mutual Ins. Co.,* 2 Pick. 249 ; *Lane* v. *Maine Mutual Fire Ins. Co.,* 3 Fairf. 47.

TENNEY, J. — Several objections are made to the right of

the plaintiffs to maintain this action; some of which relate to the form only; others are founded in a denial of its merits. From the view, which we have taken, it will not be important to consider them all.

A contract of insurance is not in any manner incident to the estate, running therewith; but a special agreement with the underwriters against loss or damage, which the assured may sustain; and not the loss or damage, which may fall upon any other person, having an interest as grantee, mortgagee, creditor or otherwise, by reason of the subsequent destruction by fire.

An equitable interest may be insured, although it may arise under an executory contract, if the contract is still subsisting. The contingency, that the title may be defeated by subsequent events, does not prevent the effect of the policy according to the design of the parties. Ordinarily, the value of the interest of the assured in the property is not material. If he had an insurable interest at the time the policy was executed, and also an interest at the time of the loss, he is entitled to recover the whole amount of the damage to the property, not exceeding the sum insured. *Strong* v. *Manuf. Ins. Co.* 10 Pick. 40; *Wilson* v. *Hill*, 3 Metc. 66; *Carpenter* v. *Providence Ins. Co.*, 16 Pet. 495.

But contracts of insurance with mutual insurance companies, are made upon principles somewhat different. In policies like the one in suit, the assured become members of the company, and are bound to pay their proportion of all losses happening, or accruing in and to the company; and the buildings insured, with the right, title and interest of the assured, to the land on which they stand, are pledged to the company, and they have a lien thereon, during the continuance of the policy. By the charter which makes a part of every policy, when a house or other building shall be alienated, by sale or otherwise, the policy shall thereupon be void. This last provision is essential to the entire security of the purposes of the company. If the land on which the building insured stands, should be wholly or partially alienated, the pledge for the payment of assessments for losses is gone or impaired. Hence in mutual insurance

companies, it is usual to require that the state of the title of the land on which the building insured is situated, should be disclosed; this is material to enable the officers of the company to judge of the security, which the land will afford for the payment of the premium notes, if an assessment should be resorted to. *Ætna Fire Ins. Co.* v. *Tyler*, 16 Wend. 385.

Dolloff and Leighton caused their interest in the property described in the policy, to be insured. They thereupon and thereby became members of the company; their interest was the right in equity of redeeming the property from the mortgage to Adams and Merrill. The mortgagees as such had no connection with the defendants, or interest in the policy; it was not their estate which was protected thereby. The money in case of a loss, was by a special provision to be paid to them, but it was *for the benefit of the assured,* by operating as a discharge *pro tanto* of their indebtedness, which was secured by the mortgage. The mortgagees did not become members of the company, and an assignment or transfer of the mortgage, could have no effect upon the policy.

The company in their defence, rely upon the change which has taken place in the rights of the assured, to the building destroyed since the insurance; and insist that there has been an alienation of the property within the meaning of the charter and the policy; and that when the loss occurred, the insurable interest, which was in them at the time of the execution of the policy, had ceased, so that the policy became void.

The most usual and universal method of acquiring title to real estate, is that of alienation, conveyance or purchase in its limited sense; under which may be comprised any method wherein estates are voluntarily resigned by one man and accepted by another. 2 Black. Com. 287.

The mode of alienation is immaterial. The language of the charter is, "when the house or other building insured shall be alienated by sale or otherwise, the policy shall thereupon be void." Whatever act of the assured operates to divest them of all interest in the property upon which insurance was effected would be such an alienation as is contemplat-

ed in the charter; they thereupon cease to be members of the company, and its risk is terminated, unless continued in the manner provided in the policy.

The assured were the joint owners of the building and machinery upon which insurance was obtained, and afterwards destroyed. Subsequent to the execution of the policy and before the loss, Dolloff conveyed in mortgage his interest for the security of the sum of four hundred dollars, and was afterwards decreed a bankrupt upon his own petition. And the remaining right in him after his bankruptcy was sold by his assignee subsequent to the loss. Leighton, conveyed by a deed absolute upon its face, his interest, after the insurance and before the loss, and took back a written instrument, not under seal, for a reconveyance of the same upon payment of the amount due to his grantee, and the amount, for which he was liable for the grantor.

By the petition of Dolloff to be decreed a bankrupt, and the subsequent decree, he was absolutely divested of all his property and the same was vested in the assignee. U. S. Bankrupt law of 1841, § 3. It is suggested in argument, that the proceedings in bankruptcy might have been stayed and the decree of bankruptcy reached; consequently the property would revest in the former owner. This is a contingency too remote to be considered the foundation of a remaining insurable interest in the bankrupt. He had no power to reclaim the property after it had vested absolutely in the assignee. He had no right thereto in law or equity by any contract executed or executory; and the case finds that a discharge was obtained. It is insisted also, that if the assets had been more than sufficient to pay all the debts of the bankrupt, the surplus would have belonged to him, which created an interest in him; or if he had failed to obtain his final discharge, he would have been holden to satisfy all claims, not extinguished from the assets, and consequently he retained an interest in the property. At the time Dolloff was decreed a bankrupt, these supposed events were within the range of possibility. But it is apprehended, that this is not the test whereby to determine,

whether there has or not been an alienation. One may be interested in the avails of property alienated and have no right whatever to the property itself in law or equity. The amount of the purchase money to be received may depend upon some contingency, but when the property is transferred by a title, which is indefeasible, no right therein remains with the party who made the transfer. The company in this case reserved to itself the right to exercise the discretion of its officers in the selection of those who should become members, and whose property should be insured. It may well be presumed that they confided in the members of the company, that while they retained the right of controlling and directing the possession of the building insured, there would be a security, which would not exist after that control and direction should be surrendered. The lien upon the property and the land for indemnity for losses generally, ceased with legal transfer under the bankrupt law; and it was clearly intended, that with the loss of the lien, the policy should fail to be valid.

By the conveyance of Leighton, the fee passed to his grantee; the consideration was his indebtedness, and the liability of his surety. The transaction between the parties to the conveyance was not a mortgage of the property, and had not the equitable incidents of a mortgage. Under the written agreement, the grantor had the right of preemption; on a fulfilment of the condition, and a refusal to reconvey on the part of the grantee, after a proper demand, he might obtain a decree for specific performance in a suit in equity. The document, which was the evidence of the agreement to reconvey is in the case; by that contract, the grantor had the period of ten years within which he could perform the condition and thereupon be entitled to a deed of the land, as the agreement stood at the time of its execution. But that agreement has since been canceled by the erasure of the name of the grantee in the deed who signed it. There is no evidence in the case, showing at what time, the instrument was canceled. If it was since the loss of the property insured, there was at the time of the fire a remaining interest in the grantor; if otherwise the

alienation was perfect. When the building was consumed, the conveyance was absolute upon the face of the deed, and it cannot be assumed, that the title under the deed was then defeasible. The default must be taken off and the plaintiffs become nonsuit.