CIRCUIT COURT.　　　　　　　　　　　　　　JULY 9, 1859.

### INSURANCE.

## BILSON *v.* THE MANUFACTURERS INSURANCE COMPANY.

A mortgagor effects a policy of insurance against fire, which provides that the insurers' liability should cease upon an assignment of the *policy* without their consent; and that it should become void in case of the termination of the interest of the insured in the subject of the insurance. Subsequently the mortgagor makes an assignment of *all his title and interest* in the policy to the mortgagee—in *visual juxtaposition* to the policy, though without the written consent of the insurers, and a renewal is effected and premium therefor paid by the mortgagee. The mortgagor then conveys the fee to the mortgagee. *Held,*

1. That the Court properly instructed the jury that if the existence of the assignment was known to the assurers, the act of renewal included the consent required by the policy.

2. That the assignment to the mortgagee only operated as an equitable transfer of the policy, and that the approval of the assignment by the insurers did not convert his contract into a *new* one for the independent insurance of the mortgagee.

3. The transfer of the property to the mortgagee, so as to divest the mortgagor's (the plaintiff's) interest, has the same effect as if the conveyance had been made to some third person other than the mortgagee, there being, in both cases, a change of interest in the subject of the insurance. (Grosvenor *v.* The Atlantic Mut. Ins. Co., 3 Smith, 391 Pa., and the State Mut. Ins. Co. *v.* Roberts, 7 Casey, 440, Pa.—approved.)

ASSUMPSIT on Policy of Insurance.

MOTION for new trial.

The facts fully appear in the opinion of the Court, delivered by

## CADWALADER, J.

The defendants insured the plaintiff in $1,500, against loss by fire, on a building in Baltimore, for one year from the 14th of March, 1856. The policy provided that the defendants' liability should cease in case of a total or partial assignment of the policy, without their consent in writing endorsed upon it; and also declared that the policy should become void in case of any transfer, or termination of the interest of the insured, (meaning interest in the building, or subject of insurance), either by sale or otherwise. It contained a provision that, the risk not being changed, the insurance might be continued for such further time as might be agreed upon; the premium for the renewal being paid, and its payment endorsed, or a receipt for it given.

The plaintiff, on the 12th of September, 1856, subscribed, on the back of the policy, an assignment of all his title and interest in it to William C. Conine. This party's interest was under a mortgage of the premises insured, executed by the plaintiff, to secure the payment of a debt greater in amount than the sum insured. This assignment was made by filling up, in a fair hand, and subscribing, a blank form, printed in large type. Conine and the plaintiff resided in Baltimore, where the defendants had a resident agent, through whom the above-mentioned insurance, and the renewal mentioned below, were effected.

On the 14th March, 1857, the defendants renewed the insurance for another year. Their agent's receipt for the premium for this renewal was endorsed upon the policy directly under the above-mentioned assignment. This assignment was in such visual juxtaposition that the agent could not have failed to see the whole of it, when he subscribed the receipt, without an extraordinary want of attention to what was before him for inspection. It was proved that Conine had paid this premium for the renewal of the insurance; and there seemed to be no reason to doubt that he was the person for whose

benefit the insurance was intended by the parties in Baltimore to continue in force.

After this renewal, the plaintiff, by a deed, of which the existence was not made known to the defendants, for a pecuniary consideration, in addition to the mortgage debt, conveyed the equity of redemption of the premises insured to the mortgagee, Conine, absolutely in fee.

After the plaintiff's interest had been thus entirely divested, the building was, before the end of the second year, consumed by fire. The loss thus incurred was of an amount greater than the sum insured.

The defendants, at the trial, objected to the plaintiff's recovery, on the ground that his assignment of the policy to Conine, having been made without the written consent required by the policy, had annulled the insurance. On this point the Court instructed the jury that the evidence would justify them in finding that the defendants' agent, when he renewed the insurance, was aware of the existence and contents of the assignment, which was then, in effect, exhibited to him; adding that, if the jury should so find, the act of renewal included, sufficiently, the consent required by the policy.

The jury found a verdict for the plaintiff. The Court is of opinion that, upon the point on which the instruction was given, the verdict was right, and that the instruction, as to this point, was not erroneous. But, the Court is also of opinion that this is not the point on which the decision of the case properly depends. The question of interest in the insurance, as distinguished from that of interest in the subject of insurance, was alone considered at the trial. The difficulty in sustaining the verdict arises from the fact that the conveyance of the equity of redemption, by the plaintiff to Conine, changed entirely the interest on the subject of insurance. As the previous mortgage debt had, in amount, exceeded the sum insured, Conine's acceptance of this conveyance might, possibly, not have modified, substantially, his interest in the insurance, as it would have been retained by him if the defendants had approved of the conveyance. But, be this as it may, the convey-

ance converted his interest in the subject of insurance, from that of a mere security for a debt, into an absolute exclusive ownership; and, at the same time, determined entirely the plaintiff's interest in the subject. Though attention may not have been particularly directed at the trial to the effect of this change of interest, the defendants, if it entirely discharged them from liability, ought not to be deprived of the benefit of it on a motion for a new trial.

Another point which has been taken, on behalf of the defendants, is that, though an action of assumpsit, at the suit of Conine, had been sustainable, upon the act of renewal, as a contract with him, the present action of assumpsit by the party originally insured, who, on the renewal, was neither the promisee nor the party to whom the loss was to be paid, cannot be sustained.

If the decision in Tillou *v.* The Kingston Mutual Insurance Company, 1 Seldon, 405, were law, there could, upon the facts of the present case, have been a recovery in an action at the suit of Conine. That case was adjudged by the Court of Appeals of New York, in 1851. Three partners, owning a mill, in which they conducted their joint business, held a policy of insurance on it against fire, which, like the policy now in question, contained a provision that it should become void if the property insured were alienated by sale or otherwise. The policy was assigned by the parties insured, with the assent of the insurers, to secure a mortgage of the mill for a debt of less amount than the sum insured. One of the partners insured, on afterwards retiring from the business, conveyed his interest in the mill to the other two owners. It was destroyed, subsequently, by fire. Two points were decided: the first, that this conveyance, by one partner to the others, had, except as to the mortgage, annulled the insurance; the second, that the mortgagee was, nevertheless, to the amount of the mortgage debt, entitled to the benefit of the insurance.

The decision of the first point, that, where partners are insured, an assignment by one of them to the others annuls the contract of insurance as between them and the insurer, has

been questioned in a subsequent extrajudicial dictum of the same Court. (3 Smith, 412.) But the decision, on this point, has been followed in a direct adjudication, by the Supreme Court of Pennsylvania, in the recent case of The Lycoming County Mutual Insurance Company v. Finley. In this case, the Court said, "that a sale by one partner to the other is within the prohibition, cannot be doubted. There is no exception in its favor in the instrument; and the terms used give no reason to imply any." These terms were the same as in the New York case. The partner who, without the consent of the insurer, conveys his interest in the subject of insurance to his copartners gives them, from thenceforth, an exclusive dominion and control where he had, previously, the right of participating in any control or dominion that could have been exercised. He thereby ceases to be a protector of the property insured against fire from fraud, or from any other cause for which the personal identity of a party insured can be material to an insurer. The decision on this point, therefore, appears to have been founded in sound legal reason.

On the second point, the decision was founded on the assumed reason that the approval, by the insurers, of the assignment of the policy to the mortgagee, had constituted a distinct and independent contract by them, with him, entitling him to the benefit of the insurance, in such a manner that his interest was not liable to be affected by subsequent acts or omissions of the party originally insured. On this point, the decision has been overruled by the Court of Appeals of New York in the recent cases of Grosvenor v. The Atlantic Mutual Insurance Company, and The Buffalo Steam Engine Works v. The Sun Mutual Insurance Company, 3 Smith, 391, 401, 414. As the law of New York is now settled, the assignment of a policy of insurance against fire to a mortgagee, with the assent of the insurer, merely gives to the mortgagee the right of requiring that the amount insured shall, to the extent of the mortgaged debt, be paid to him, whenever it would afterwards have been recoverable by the mortgagor if no such assignment had been made. The approval of the assignment by the insurer does

not convert his former contract of insurance into a new one for the independent insurance of the mortgagee. Unless the mortgagor could have recovered, if no assignment had been made, there can be no recovery of the insurance by, or for, the mortgagee. Therefore, a subsequent alienation of the equity of redemption by the mortgagor, made before any loss by fire without the consent or approval of the insurer, annuls the insurance as to both mortgagor and mortgagee.

The cases reported in 7 Casey, 430; 8 Cushing, 133, 136, 137, and 10 Cushing, 352, 353, show that a like doctrine on the subject prevails in Pennsylvania and in Massachusetts. In 16 Peters, 501, 502, Judge Story, in delivering the opinion of the Supreme Court, said that if "a mortgagor procures a policy on the property against fire, and he afterwards assigns the policy to the mortgagee, with the consent of the underwriters (if that is required by the contract to give it validity) as collateral security, that assignment operates solely as an equitable transfer of the policy, so as to enable the mortgagee to recover the amount due in case of loss. But it does not displace the interest of the mortgagor in the premises insured. On the contrary, the insurance is still his insurance, and on his property, and for his account. And so essential is this, that if the mortgagor should transfer the property to a third person, without the consent of the underwriters, so as to divest all his interest therein, and then a loss should occur, no recovery can be had therefor against the underwriters, because the assured has ceased to have any interest therein, and the purchaser has no right or interest in the policy."

Consequently, if in the present case the conveyance which divested the plaintiff's interest had been to another person than the mortgagee, the insurance would, from the date of such conveyance, have been, to all intents and purposes, at an end. The authorities define so clearly the rule of decision and the principle from which it is deduced, that we would not be at liberty to consider the convenience or expediency of the rule, or to inquire into probabilities of justice, or injustice, in the result of its ordinary application.

The comparative magnitudes of the mortgage debt and the sum insured cannot affect the question of the application of the rule. Nor can its application be affected by the circumstance that the person to whom the absolute conveyance in fee has been made was the same party to whom the policy had been previously assigned with the assent of the insurers. If the question depends upon the change of interest, not the insurance, but in the subject of insurance, these distinctions cannot be attended with any material difference. We have seen that the approval by the defendants of the assignment of the policy to Conine, though a recognition of him as the substitute of the plaintiff to receive the payment of a loss, had not been a dispensation with any former condition of the contract as to a change in the ownership of the subject of insurance. In two of the cases which have been cited, the transfer by a partner to his copartners of his interest in an insurance of property of their firm had introduced no new person as a party insured. The doubt in those cases did not arise from the identity of the person, but from the identity of the character of the interest which, by the transfer, had been changed, as to the remaining partners, in proportion, but not in kind, though it had been absolutely determined as to the retiring partner.

In the present case, not only was the plaintiff's interest, and with it his protective dominion and control, forever determined by the conveyance in question; but this dominion and control were irrevocably vested in Conine, by whom they could not previously have been exercised; and the character of whose interest was thus entirely changed. His personal identity as mortgagee was, therefore, so far as the reason of the rule is concerned, immaterial.

The case thus appears to be completely covered by the authorities. They show that there could not be a recovery of the insurance in an action at the suit of either Conine, or the present plaintiff. The verdict must, therefore, be set aside, and a new trial ordered.

GRIER, J.—I fully concur with my brother Cadwalader in all his views, as above expressed.