NICHOLAS G. HOXSIE *vs.* THE PROVIDENCE MUTUAL FIRE INSURANCE COMPANY.

Where the directors of a mutual fire insurance company are empowered by charter "to determine the sum to be insured upon any building, provided it do not exceed three fourths of the value thereof," but are, by the general powers vested in them, to determine the value of the building, the company, when sued for a loss under a policy, is estopped from objecting that the sum insured by the directors exceeded the prescribed limit of value; there having been no fraud or misrepresentation as to value on the part of the insured.

A plea alleging such excess of insurance over value in full answer to a count upon the policy, is bad upon demurrer, inasmuch as it goes only to such excess, — and thus sets up but a partial defence to the count.

A fire policy taken out from a mutual company by a mortgagor of a house upon his interest in it, though assigned with the assent of the company to the mortgagee, is avoided by a quitclaim deed by the mortgagor of all his interest in the land to the mortgagee, executed after the assignment and before the loss, the policy never having been ratified and confirmed by the company — and the charter providing, that upon alienation of a house insured " by sale or otherwise," the policy shall be *ipso facto* void, unless ratified and confirmed to the alienee.

Such policy too, upon a house described therein as " occupied for a dwelling-house," " the basement being of stone and wood," becomes void in the hands of the mortgagee by the use and occupation of the basement of the house, after the assignment and before the loss, as a joiner's shop, although such change of use was unknown to the mortgagee; the charter expressly providing, that " no policy shall extend or be construed to extend " to such and other specified risks, " unless the same are expressly mentioned in the policy, and a proportional premium and deposit paid."

COVENANT broken, to recover losses upon two policies of fire insurance issued by the defendants, the one bearing date October 26, 1859, for $1500, effected by the plaintiff on a house on his farm, in the town of West Greenwich, occupied as a dwelling-house; the other, bearing date November 24th, 1853, and effected by one Benjamin R. Hoxsie on a house on Nooseneck Hill, in the same town, and " occupied as a dwelling-house." The latter policy recited that the property insured was under mortgage to the plaintiff; and the policy was, on the day of its date, assigned to the plaintiff — the transfer being recorded in the office of the defendants.

The declaration contained two counts: the first, upon the policy effected by the plaintiff, and the last upon the policy effected by Benjamin R. Hoxsie, and by him assigned to the plaintiff.

The second plea to the first count and the last plea to the second count, alleged that the policies were respectively made for a much greater sum of money than three fourths of the actual value of said insured premises, in said counts mentioned, contrary to the form of the act of incorporation of said company; and by reason thereof were void. The first plea to the second count, in substance, alleged, that after the assignment of the policy to the plaintiff, and before the loss by fire, to wit, on the day of October, 1859, the said Benjamin R. Hoxsie, by his deed of that date, for valuable consideration, released and quitclaimed to the plaintiff and his heirs all his right, title, and interest in the insured premises. To these pleas the plaintiff demurred generally, and the defendants joined in the demurrer. The second plea to the second count alleged, in substance, that after the making and assignment of the policy covenanted on, and before the loss, a certain part of the house insured thereby, " to wit, the basement thereof, was used and occupied as and for a joiner's shop, whereby the same became and was exposed to greater risk and hazard than the same was in at the time the same was insured," by reason whereof said policy became, and was null and void, &c. To this plea the plaintiff replied, in substance, that the house insured was not, after the making and assignment of the policy and before the loss, used and occupied as and for a joiner's shop, *with the knowledge of the plaintiff*, and thereby exposed to greater risk, &c. and concluded to the country. To this replication the defendants demurred generally, and the plaintiff joined in the demurrer, specially assigning for cause that it involved a negative pregnant, without stating how, and tendered an immaterial issue.

The defendants were a mutual insurance company, and the sections of their charter, referred to in the pleadings and arguments, and in the opinion of the court, were as follows : —

" SEC. 2. *And be it further enacted*, That all and every person and persons who now are, or who shall at any time hereafter become insured in or with said company, and also their respective heirs, executors, administrators, and assigns, being allowed to continue as persons insuring in said company, as

hereinafter mentioned and provided, shall be deemed and taken as members thereof, for and during the term specified in his, her, or their respective policies and no longer, and shall at all times be concluded and bound by the provisions of this act.

" SEC. 3. *And be it further enacted,* That the direction and management of said company, and all the funds and affairs thereof, from time to time, shall be intrusted with and committed to nine of the members thereof, who shall be styled the ' *Directors of the Providence Mutual Fire Insurance Company,*' five of whom shall be a quorum, and all questions shall be determined by a majority of those present at any legal meeting.

" SEC. 8. *And be it further enacted,* That the board of directors shall superintend the concerns of the company, and shall have the management and direction of all the funds, matters, and things, not otherwise provided for by the company. They shall have power from time to time to appoint a treasurer, secretary, clerk or book-keeper, surveyors, messengers, and agents, and allow them such compensation for their services, and take such securities from them, as they shall think necessary, for the faithful discharge of their respective trusts; and also to remove all or any of them, as they shall see cause : to determine the sum to be insured upon any building, provided it shall not exceed three fourths (except on stone or brick buildings, upon which four fifths of the value may be insured) of the value thereof : to direct and order the making and delivering all policies of insurance, and to purchase and provide books and all other things needful for the office of said company, and for carrying on the affairs thereof: to fix the premium or sum to be deposited for insurance on any building or buildings insured by said company : to reward such person or persons as shall distinguish themselves by extraordinary exertions or services in extinguishing fires, not exceeding ten dollars to any individual; and to draw upon the treasurer for the payment of all losses and expenses incurred in the transactions of the concerns of said company. They shall and may from time to time, at their monthly meetings, choose three trustees, out of their own number, who shall continue in their said office during the pleasure of the directors, and the said trustees, or any two of them, shall

execute in their own name, such policies of insurance as are ordered by the directors; and the said trustees shall report all their proceedings and doings, by virtue of this act, to the directors at the several monthly meetings, and the same, together with the proceedings and doings of the directors, shall be entered in books of minutes, to be kept for that purpose; and any director may enter therein his dissent from, or approbation of the said proceedings, assigning his reasons for the same.

" Sec. 11. *And be it further enacted,* That each and every person effecting insurance in or with said company, shall have one or more policy or policies for the same, under the hand of the trustees or two of them at least; all which insurances shall be deemed good and valid, from the time that the charges of insuring and the deposit money shall be paid or secured as is hereinafter directed.

" Sec. 14. *And be it further enacted,* That no insurance on any building or buildings within this state, shall be good and valid, unless the insured has a good and perfect title in fee-simple, unincumbered, to the building or buildings, and the land covered by the same, or unless the true title of the insured and the incumbrances on the premises be expressed in the policy.

" Sec. 20. *And be it further enacted,* That all buildings insured by this company within the state, and all the insurer's right, title, and interest, claims and demands, in and to the lots whereon the same are situate, shall become pledged to this company, and the said company shall have a lien thereon against the insured, during the continuance of his, her, or their policies; and if any person or persons insured as aforesaid, their heirs, executors, administrators, or assigns, shall for the space of three months, neglect or refuse to pay the whole, or such part of the demands against him, her, or them, as shall be ordered by the board of directors, and as herein before provided, then, and in that case, the said directors shall have full power and lawful authority to recover the same in the manner following, viz.: A copy of the claim or demand shall be annexed to the original writ, which writ shall issue at least six days before the sitting of the court to which it is made returnable, from the office of the clerk of either of the courts of common pleas, or of

the supreme judicial court, in either of the counties of this state; and the proper officer to whom such writ shall be delivered, shall thereon attach the real estate of the defendants pledged in his, her, or their policies of insurance, equal in amount to the damages laid in said writ. And the said writ shall be returned to the same clerk's office six days before the sitting of the court, and be entered on the docket on the second day of the term thereof; on which said day the defendant or defendants may file his or their answer thereto ; and at the same term of said court, final judgment shall be rendered in said case, and execution shall issue thereon according to law, towards satisfying such execution, unless the same shall be otherwise satisfied.

" SEC. 21. *And be it further enacted,* That the directors shall settle and pay losses at the end of ninety days from the time that the same shall have been duly notified as aforesaid, unless they shall judge it proper within that time, to rebuild the house or houses destroyed, or repair the damages sustained, which they are hereby empowered to do, in convenient time: *Provided,* that they do not lay out and expend in such building or repairs, more than the sum insured upon the house or houses, and the buildings injured or demolished; but no allowance is to be made for gilding, history or landscape painting, stucco or carving, nor are the same to be replaced, if destroyed by fire.

" SEC. 22. *And be it further enacted,* That whenever the property of any person or persons, in any house or building insured in said company shall cease and determine, it shall and may be lawful for the person or persons insured, their heirs, executors, administrators, and assigns, to receive such deposits as may be due to them from said company.

" SEC. 23. *And be it further enacted,* That if any alteration should be made in any houses or buildings, by the act of the proprietors of them after they are insured in the office of said company, whereby they may be exposed to greater risk or hazard than they were in at the time they were insured, then and in every such case, the insurance made upon such houses or buildings shall be void, unless an additional premium and deposit shall, after such alterations, be settled and paid by agreement with the directors.

44 *

" SEC. 28. *And be it further enacted*, That no sugar-house, bake-house, distill-house, cooper's or joiner's shop, or other house or shop wherein any of the hazardous trades or businesses following are carried on, viz.: chemists, ship-chandlers, stable-keepers, malt-driers, oil, or colormen; or any which are used as stores for the following hazardous goods, viz.: hemp, flax, tallow, pitch, tar, turpentine, rosin, gunpowder, shingles, hay, straw, fodder of all kinds, and grain unthreshed, shall be insured in said company, but on such terms only as shall or may be specially agreed upon by the directors; and no policy shall extend or be construed to extend to any of the houses, buildings, or risks specified in this section, unless the same is expressly mentioned in the policy, and a proportional premium and deposit paid; nor shall any policy extend or be construed to extend to any house or building in which more than twenty-eight pounds of gunpowder shall have been for twenty-four hours next before the time that the same house or building was burnt.

" SEC. 29. *And be it further enacted*, That when any house or other building shall be alienated by sale or otherwise, the policy shall thereupon be ipso facto void, and be surrendered to the directors of said company to be cancelled, and upon such surrender the insured shall be entitled to receive his, her, or their deposit notes, upon the payment of his, her, or their proportion of all losses and expenses, which had accrued prior to such surrender; *Provided, however*, That the grantee or alienee having the policy assigned to him may have the same ratified and confirmed to him, her, or them, for his, her, or their own proper use and benefit, upon application to the board of directors, and with their consent, within thirty days next after such alienation, on their giving proper security to the satisfaction of said board, for such portion of the premium note as shall remain unpaid; and by such ratification and confirmation, the parties causing the same, shall be entitled to all the rights and privileges, and subject to all the responsibilities to which the original insured was entitled or subject under this act.

" SEC. 31. *And be it further enacted*, That it shall be the duty of the secretary or clerk of the board of directors to make and keep a fair record of all policies of insurance and transfers

thereof, and all and singular the votes, orders, resolutions, and proceedings of said board."

*Eames*, for the plaintiff.

The second plea to the first count and the last plea to the second count, are insufficient in law to preclude a recovery on the counts, because they do not aver that the policies of insurance were made for more than three fourths of the actual value of the premises thereby insured, by the misrepresentations, or by the false and fraudulent representations of the assured; or that the defendants were induced to make, or the assured had procured the making, of said policy, for more than three fourths of the value of said premises, by any such misrepresentations, or false or fraudulent representations. *Borden* v. *Hingham Mut. F. Ins. Co.* 18 Pick. 525; *Fuller* v. *Boston Mut. F. Ins. Co.* 4 Met. 206; *Holmes et als.* v. *Charlestown M. F. Ins. Co.* 10 Met. 215; *Phillips* v. *Merchant's M. F. Ins. Co.* 10 Cush. 350; *Hersey* v. *Merrimack M. F. Ins. Co.* 7 Foster, 153; *Williams* v. *New England M. F. Ins. Co.* 31 Maine, 226; Angell on Fire and Life Ins. p. 226, § 190.

The defendants' third plea is bad. The rights of the plaintiff cannot be defeated or impaired by the acts of Benj. R. Hoxsie, subsequent to the assignment by him to the plaintiff, with the consent of the defendants, of the policy mentioned in the second count of the declaration. The mortgage was itself an alienation by sale or otherwise. *McCulloch* v. *Ind. M. F. Ins. Co.* 8 Blackf. 54; *Durar* v. *Ins. Co.* 4 Zabriskie, 198; Angell on Fire and Life Ins. p. 240, § 205. The assignment, with the consent of defendants, was in the nature of a new covenant with the assignee of the policy. Angell on Fire and Life Ins. p. 104, § 61; 2 Am. Lead. Cases, 146; *Mowry* v. *Todd*, 12 Mass. 281; *Wilson* v. *Hill*, 3 Met. 69; *Kingsley et als.* v. *New England Mut. F. Ins. Co.* 8 Cush. 400; *Phillips* v. *Merrimack Ins. Co.* 10 Ib. 353; *Warren* v. *Wheeler*, 8 Shepl. 484; *Clark* v. *Thompson*, 2 R. I. 148; *Brown* v. *Roger Williams Ins. Co.* 2 Ames, 399. The acts of a mortgagor in such case cannot affect the policy. *Traders' Ins. Co.* v. *Roberts*, 9 Wend. 404; *Roberts* v. *Traders' Ins. Co.* 17 Wend. 638; *Tillou* v. *Kingston M. F. Ins. Co.* 7 Barb. 573;

S. C. 1 Seld. 405; *Boynton* v. *Clinton & Essex M. F. Ins. Co.* 16 Barb. 256; *Conner* v. *Mut. Ins. Co. of Albany,* 1 Comst. 290; *Allen* v. *Hudson River Mut. Ins. Co.* 19 Barb. 447; *Charleston Ins. & Trust Co.,* ads. *Neva,* 2 McMullan, 248; *Birdsey* v. *City Fire Ins. Co.* 26 Conn. 171; *Pollard* v. *Somerset M. F. Ins. Co.* 42 Maine, 224; 2 Gray, 216; 4 Zabriskie, 171. The relation between the plaintiff and the defendants was that of insurer and insured. In legal effect, the transaction was an insurance to the plaintiff of his interest as mortgagee. *Charleston Ins. & Trust Co.,* ads. *Neva,* 2 McMullan, 248; *Allen* v. *Hudson River M. Ins. Co.* 19 Barb. 446.

The quitclaim deed from Benjamin R. Hoxsie to the plaintiff was not an alienation of the insured premises, within the meaning of sect. 29 of the charter. The alienation contemplated by that section is an alienation to a third party. *Tillou* v. *Kingston M. F. Ins. Co.* 7 Barb. 574; *Wilson* v. *Genesee M. F. Ins. Co.* 16 Ib. 511; Angell on Fire and Life Ins. p. 267, § 200 *a,* (2d edition.)

The replication to the second plea to the second count is at least good enough for the plea. The use of the insured building as a joiner's shop, in the sense of sect. 28 of the charter, is a use by the authority, express or implied, of the assured. *Loud et al.* v. *Citizens' Mut. Fire Ins. Co.* 2 Gray, 222; *Farmers & Mechanics' Ins. Co.* v. *Simmons et als.* 6 Casey, (30 Penn.) 301, and cases cited; *Dobson* v. *Sotheby et al.* 1 Moody & Malkin, 90; S. C. 22 Eng. C. L. Reports, 260; *Shaw* v. *Robberds,* 6 Ad. & Ell. 103; S. C. 33 Eng. C. L. Reports, 16. The averment of a use by the authority, express or implied, of the insured, is, therefore, material, and consequently the traverse of such averment does not tender an immaterial issue. The replication traverses the plea in the language of the plea, and if it involves a negative pregnant, or tenders an immaterial issue, the fault is in the plea and not in the replication.

*James Tillinghast,* for the defendants.

The second and last pleas (one to each count in the declaration upon different policies) raise the same question, viz.: that the policies are void for having been made for more than two thirds of the value of the property insured, contrary to the pro-

visions of the defendants' act of incorporation.    See sect. 8 of charter annexed to policies.

A corporation can make no contract prohibited by its charter. All such contracts are void and not binding upon the corporation, and cannot be enforced against it.    Angell & Ames on Corporations, 256 *et seq.*; see *Hale* v. *Mechanics' M. F. Ins. Co.* 6 Gray, 173.    The alienation of the property as set out in the third plea to the second count, avoided the policy declared on in that count.    See sect. 29 of charter.    This would be so on common-law principles, aside from the above section of the charter.    In fact, that section in declaring the policy void on alienation, is only in affirmance of what would be the effect at law without it, and provides how the policy, after being so avoided, may be revived.    *Lynch* v. *Dalzell,* 3 Brown, P. Ca. 497; *Sadlers' Co.* v. *Badcock,* 2 Atkyns, 554; *Wilson* v. *Trumbull M. F. Ins. Co.* 19 Penn. (7 Harris,) 372. The fact that this policy had, previously to such alienation by the assured, been assigned to the plaintiff as mortgagee, with the assent of the company, does not avoid the forfeiture of the policy by such alienation.    It was still the interest of the original assured that was covered by the policy, and the plaintiff took the transfer of it, subject to its being defeated in his hands by any act of the assured which would have avoided it had it not been assigned.    *Carpenter* v. *Wash. Ins. Co.* 16 Peters, 495; *Macomber* v. *Cambridge M. F. Ins. Co.* 8 Cush. 133; *Grosvenor* v. *Atlantic F. Ins. Co.* 3 Smith, (17 N. Y.) 391; *Buffalo Steam Engine Co.* v. *Sun M. F. Ins. Co.* Ib. 401; *Birdsey* v. *City Fire Ins. Co.* 26 Conn. 165; *State M. F. Ins. Co.* v. *Roberts,* 31 Penn. St. Rep. 438; *Adams et als.* v. *Rockingham M. F. Ins. Co.* 29 Maine, 292.    Nor does the fact that this alienation was by a conveyance of the equity of redemption to the plaintiff, who already held a mortgage of the property, at all change the application of the principal.    *Macomber* v. *Cambridge M. F. Ins. Co.* 8 Cush. 133, a *parallel case.*    See *Murdock* v. *Chenango County M. F. Ins. Co.* 2 Comst. 210; *Finley* v. *Lycoming County M. F. Ins. Co.* 30 Penn. St. Rep. 311; *Howard* v. *Albany Ins. Co.* 3 Denio, 301; *Tillou* v. *Kingston M. Ins. Co.* 1 Selden, 405.

But were this not so, this action in the name of Nicholas G.

Hoxsie cannot be maintained upon the policy as set out in the second count of this declaration. The action must be, if at all, in the name of the assured, as at common law; as it does not come within the 29th section of defendants' act of incorporation, which only applies to alienations, i. e. conveyances of the title, and not to mortgages; and there is no provision, therefore, for mortgagees becoming members of the company. *Folsom* v. *Belknap County M. F. Ins. Co.* 30 N. Hamp. 231; *Conover* v. *M. F. Ins. Co. of Albany*, 3 Denio, 254; s. c. in Court of Appeals, 1 Comstock, 290; *Lazarus* v. *Ins. Co.* 5 Pick. 81; Angell on Fire and Life Ins. § 211 and note, and cases cited.

There is no averment in this count of the declaration, that the plaintiff ever did (if he could, under their charter) become a member by complying with the requisitions of said section 29, nor no sufficient averment of plaintiff's interest in the property insured. *Rollins* v. *Columbia F. Ins. Co.* 25 N. Hamp. 200; *Jessal* v. *Williamsburg Ins. Co.* 3 Hill, (N. Y.) 88; *Munn* , v. *Herkimer Ins. Co.* 4 Ib. 187; *Bayles* v. *Hillsborough Ins. Co.* 3 Dutcher, 163; *Pollard* v. *Somerset M. F. Ins. Co.* 42 Maine, 221.

The defendants' special demurrer to the plaintiff's replication to the fourth plea is well taken. The replication is bad, as involving a negative pregnant, or tendering an immaterial issue; for the knowledge of the plaintiff of the change in the use of the building by which the risk was increased, (under section 28 of the defendants' charter,) is entirely immaterial and not traversable,— particularly as the plaintiff was merely a mortgagee. *Mead* v. *Northwestern Ins. Co.* 3 Selden, 530; *Glen* v. *Lewis*, 20 Eng. Law & Eq. 364. This section of the charter is a part of the policy, and amounts to a warranty by the assured, or a condition of the contract, a breach of which avoids the policy; and the policy is equally avoided, though a part only of the premises has been so used. The contract of insurance is entire. *Lee* v. *Howard F. Ins. Co.* 3 Gray, 583; *Harris* v. *Columbiana Ins. Co.* 4 Ohio, (N. s.) 285; *Wall* v. *East River M. F. Ins. Co.* 3 Selden, 370; *Richards* v. *Protection Ins. Co.* 30 Maine, (17 Shep.) 273.

AMES, C. J.   The second plea to the first count, and the last plea to the second count of this declaration, are clearly bad. It is true, as argued for the defendants, that the officers of a corporation cannot exceed their charter powers; and that in a mutual company like this, of which the assured are members, they may fairly. be presumed actually to know, as well as constructively to have notice of, all limitations of these powers. The language of the 8th section of the charter restricting the directors of the company in the relative amount which they may insure upon buildings is, certainly, very strong and explicit. " They shall have power to determine the sum to be insured upon any building, provided it shall not exceed three fourths (except on stone or brick buildings, upon which four fifths of the value may be insured) of the value thereof;" but then, by this very section as well as by the third, they have the general management and direction of the funds and affairs of the company, and the determination of all questions relating thereto, as well as the special power to fix the premium or sum to be deposited for insurance, which, of course, is to be proportioned to the amount insured.   They, and they alone, on the part of the company, have the power to determine the value, three fourths or four fifths of which, as the case may be, they are at liberty to insure; and when without fraud or misrepresentation on the part of the assured, they have agreed with him as to this value, and have taken his money upon the basis of this agreement, the company ought to be bound by their action, as the assured must be by his.   The value of a building must necessarily be a mere matter of estimate or opinion, incapable of mathematical exactitude, and depending not only upon the manner and consequent cost of construction, but upon the thousand and one circumstances which from time to time sway the market here, even in real estate.   Unless, then, this is to be considered as concluded by the policy, where a mutual estimate has been fairly arrived at by both parties to it, it might lead, especially at a distance of time, (and the policies of this company run for seven years,) not only to dispute and litigation, but possibly to great injustice.   We say "possibly," because in practice we hardly think that an insurance company would

reap much advantage from an appeal from the judgment of their own directors, in such a matter, to that of a jury. The rule adopted by the courts in the cases upon this point noted in the plaintiff's brief, is quite satisfactory to us, as a rule of practical justice, and we apply it to this case.

But waiving this, there is another fatal objection to this plea. Grant that the estimate of value by the directors, in a fair case, is not binding upon the company, does it follow that the policy is *void* because the agents of the company are not as wise or as wary in their duty as they ought to be? Full justice would be done to the *company*, at least, by correcting the error of their directors, and abating the excess of insurance over the limit of proportional value, upon the adjustment of the loss. They might well afford to pay the sum which their agents had a right to insure, especially if they retained the greater premium proportioned to what they did insure. In this view of the matter, which, in the absence of all fraud or misrepresentation on the part of the insured, is the one we should certainly take, if we were disposed to depart in such a case from the sum fixed in the policy, the plea, which professes in its commencement to answer the whole cause of action declared upon in the count, would answer it only in part; that is, as to the excess insured over the charter limit of value; and so, would be insufficient upon general demurrer. *Earl of Manchester* v. *Vale*, 1 Saund. 28, and note 3.

The first plea to the second count, demurred to by the plaintiff, and the replication to the second plea to the same count, demurred to by the defendants, present questions turning upon the same general principles; and as our determination of these will dispose of the cause of action covered by the count, we deem it unnecessary to consider the further question presented by the defendants, whether the action upon the policy originally issued to Benjamin R. Hoxsie, and by him assigned to his mortgagee, should not have been brought in the name of the former.

The first plea to the second count, in substance, alleges, that after the execution of the policy and its assignment to the plaintiff as mortgagee, and before the loss, the mortgagor, in whose name

the policy was taken out, quitclaimed all his interest in the house insured to the plaintiff, leaving himself, the party originally insured, no interest, at the time of the loss, in the subject of insurance. The plaintiff's demurrer admits this, and the question is, what effect had this deed of quitclaim upon the policy?

It is as old as the law of fire insurance in England, that a fire policy, being a personal contract of indemnity between the insurer and insured by which the interest of the latter in the subject of insurance is alone covered, does not pass, upon alienation of the subject, as incident thereto, nor, without the consent of the insurer, upon an alienation of the subject, by an assignment of the policy to the alienee. From the very nature of such a contract, it follows, in such case, that upon the determination, before loss, of the interest of the insured, the policy becomes a nullity. *Lynch* v. *Dalzell*, 3 Brown's P. C. 497; *Sadler's Co.* v. *Badcock*, 2 Atk. 554; *Wilson* v. *Hill*, 3 Metc. 66, 68, *Shaw*, C. J.; *Carpenter* v. *Providence Washington Ins. Co.* 16 Pet. 495, 503. In modern policies this is not ordinarily left to inference; and in this, by the 29th section of the charter of the company, made, by the 2d section, with the other charter provisions, as well as by reference in the policy, a part thereof, and conclusively binding upon all policy holders, it is expressly provided, that " when any house or other building shall be alienated by sale or otherwise, the policy shall thereupon be *ipso facto* void," unless, indeed, " the grantee or alienee, having the policy assigned to him, shall have the same ratified and confirmed to him " for his own benefit, upon application to the board of directors, and with their consent, within thirty days next after such alienation, on his giving security to the satisfaction of the board for such portion of the premium note as shall remain unpaid; by which ratification and confirmation, the parties causing the same shall be entitled to all the rights and privileges, and be subject to all the responsibilities, to which the original insured was entitled or subject under the charter.

Is there anything in this case which relieves it from the unratified alienation by the assured of all his interest in the subject of insurance, set up in the plea? It is said, that

upon the same day that the policy was taken out by Benjamin R. Hoxsie, it was assigned, with the consent of the company, to the plaintiff, whose mortgage on the house insured was noticed in the policy; and that, by virtue of this consent, the plaintiff, to the extent of his mortgage, became an original insurer, incapable of being affected by the subsequent alienation to him of the interest of the person originally insured.

We do not apprehend that the mortgage, which existed prior to the policy, was any *alienation* of the subject of insurance whatever; and certainly not, in the sense of the 29th section of the charter of this company, which contemplates only an alienation made after the effecting of the policy. It follows, that no such application to the board of directors, or consent given by them, could have been made upon the issuing of this policy, such as are contemplated by this section; nor is there anything in these pleadings to show that anything ever was done by this company or its agents, by which the plaintiff under this policy subjected himself to the responsibilities, or entitled himself to the rights, of the original insured. It was necessary to the validity of the policy, under the 14th section of the charter, that the incumbrance of the plaintiff, by way of mortgage upon the house insured, should be expressed in the policy; and this having been done, and the insured having assigned the policy to the plaintiff as mortgagee in farther security for his debt, all that was done by the company was to record this assignment, with the policy, upon their books. No doubt this would operate as notice to them of the assignment of the policy, and be viewed as an implied assent on their part thereto; but it left wholly unaffected the questions who was the insurer, and whose interest was insured. The insurance was, notwithstanding all this, the insurance of the mortgagor, upon his interest in the subject, assigned to the plaintiff by way of security for his mortgage debt, and merely collateral thereto. As such, in case of loss, it was to be collected, held, and applied, for the benefit of the mortgagee, to the extent of his mortgage debt, but if that were paid, or beyond that, to the benefit of the mortgagor, the insured. *Carpenter* v. *The Providence Washington Ins. Co.* 16 Pet. 495, 501, 502.

As a policy of fire insurance is not a negotiable instrument, and gives to the assured only a contingent and conditional right to recover in case of loss, it would seem to follow, that when it was assigned, though with the consent of the insurer, merely as the policy of the assured and as collateral security for his debt, it would be defeated by breach of any of its conditions, before loss, suffered or committed with or without the knowledge or complicity of the assignee. If a mortgagee desires to avoid responsibility, to this extent, for the acts or defaults of the mortgagor, it is perfectly competent for him to take out insurance upon his own interest as mortgagee, and to hold it unaffected by the conduct of another. It seems to us quite unnecessary, in search of some general equity, to break down the contracts of parties perfectly capable of making them; and such, in application to this subject, is the doctrine of the present day by the decided weight of authority. Ibid.; and see cases cited to this point by the counsel for the defendants.

Nor is this result at all affected, in the view of the courts of Massachusetts, by their notion, that in case of assignments of fire policies similar to this, the action to recover the loss may, upon the ground of a new contract with him, be brought in the name of the assignee. This new promise to pay is still construed by them to embrace, and be limited by, the conditions of the policy, and to be defeated with it, by any breach of those conditions by the assignor, though subsequent to the assignment. *Macomber* v. *Cambridge Mutual Fire Ins. Co.* 8 Cush. 133; *Fogg & another* v. *Middlesex Mutual Fire Ins. Co.* 10 Ib. 337; *Hale* v. *Mechanics' Mutual Fire Ins. Co.* 6 Gray, 169.

It is unnecessary, however, to decide in this case, what would have been the effect upon the policy of an alienation of the interest of the mortgagor to a stranger, made without the consent of the defendants; the policy having been previously assigned, with their consent, to the plaintiff, his mortgagee. The plea alleges, that the plaintiff himself received the quitclaim of all the interest of the assured in the subject of insurance. *He* cannot, therefore, complain that he is subjected to the breach of a condition of this policy, in which he admits by his demurrer that he participated. If he chose to foreclose his mortgage, and

terminate the insured interest of the mortgagor without obtaining, in his favor, as alienee, the company's ratification of the policy, there is no pretence, either at law or in equity, for holding them to a contract, an express condition of which he himself has broken. *Macomber* v. *Cambridge Mutual Fire Ins. Co.*, supra.

This plea must, therefore, be sustained, as a good bar to the cause of action declared upon in the second count in the declaration.

The replication to the second plea to this count remains to be considered. The policy, as set out in the count, describes the house insured, as " occupied for a dwelling-house," " the basement being of wood and stone." The plea alleges, that this basement, after the assignment of the policy and before the loss, was used and occupied as a joiners' shop, and thereby was exposed to a greater risk than when insured, of which the plaintiff had notice, &c. The replication, to which the defendants have demurred, replies, that it was not so used and occupied with the knowledge of the plaintiff. The question thus raised is, whether such use of the house after the assignment, and unknown to the assignee of the policy, avoids it.

We have already stated our conclusion, that the plaintiff held this policy subject to be defeated by all breaches done or suffered by the assignor after the assignment and prior to the loss; and in application to this portion of the pleadings, need add nothing more. There is very great justice, and very high authority for holding, that the description in a fire policy of the construction and use of the premises insured, constituting as it does the basis of the insurance and determining the amount of the premium, is tantamount to a warranty on the part of the assured, that this description shall remain substantially true while the risk is running ; and that no alteration in either shall subsequently be made by the insured, to enhance the liability of the insurer. *Sillem* v. *Thornton*, 3 El. & Blackb. 868, 883. " It seems strange," says Lord Campbell, in delivering the opinion of the court in the case just cited, " that if a house be described in the policy as occupied by the owner carrying on the trade of a butcher, so that the premium is on the lowest scale, he may,

immediately afterwards, merely taking care that the walls and floor and roof remain, so that it shall be the same identical house, convert it into a manufactory of fireworks, a trade trebly hazardous, for which the highest scale of premium would be no more than a reasonable consideration for the stipulated indemnity." The 28th section of the act incorporating the defendants recognizes and applies precisely this reasoning. It provides, not only that " no sugar-house, bake-house, distil-house, *or joiners' shop*, or other house," in which certain hazardous trades are carried on, " shall be insured in said company, but on such terms only as shall or may be especially agreed on by the directors," but that " no policy shall extend, or be construed to extend, to any of the houses, buildings, or risks specified in this section, unless the same is expressly mentioned in the policy, and a proportional premium and deposit paid; nor shall any policy extend to, or be construed to extend to, any house or building in which more than twenty-eight pounds of gunpowder shall have been for twenty-four hours next before the time that the same house or building was burnt." The only purpose of this section is, to exclude the specified risks from the policy unless named and paid for; and it applies, in our judgment, to exclude them, as well when arising during the running of the policy from a change of use, as when the prohibited use exists at the time of effecting the policy. In other words, it holds the insured to the risk he describes and pays for, to this extent, at least, that he has no policy for the risks prohibited, if he has not described and paid for them. The consequence of this must be, that the moment he changes the use of the insured premises to any of those thus conditionally forbidden his policy ceases to attach, and the liability of the company upon it is determined.

The plea, in our judgment, sets up a good bar to the count; the replication was no sufficient answer to it, and must, therefore, be overruled.

The result is, that the plaintiff is entitled to judgment upon the first 'count, and the defendants upon the second count, in the declaration.