# THE HAMBURG–BREMEN FIRE INSURANCE COMPANY.

*v.*

# LEWIS.

---

VARIANCE; AGENCY; FIRE INSURANCE; POLICY; WARRANTY; FRAUD.

1. Where in a suit on a contract of insurance, the plaintiff seeks to recover in his own right, while the policy when offered in evidence is shown to have been issued to him as attorney without disclosing any principal, the variance is fatal.

2. An agent without interest in insured property, with whom a contract of insurance has been made, may sue upon such contract in his own name; but in such case the beneficial interest of the principal must be averred and proved as the foundation of the right to recover.

3. It is the duty of an applicant for insurance to know the contents of the policy before accepting it and paying the premium thereon, and the acceptance of a policy which insures a building as "occupied as a dwelling," is a warranty that the building was so occupied at the time.

4. If the agent of an insurance company be guilty of a fraud upon his principal, and the assured knowingly aids in its perpetration, or, by neglecting to read the application or the policy, suffers it to be perpetrated, he is guilty of partcipating in the fraud, and must suffer the consequences.

5. Where a policy of insurance provides that "any person other than the assured, except the authorized agents of this company, who may have procured this insurance from the company, shall be deemed to be the agent of the assured named in this policy, and not of the company, under any circumstances whatever," an independent solicitor of insurance who procures the issuance of a policy by the authorized agents of the company for a percentage of their commission, is not an agent, or subagent of the insurers, whose knowledge of the fact that a building insured as an occupied dwelling was not so occupied, will bind the company.

6. In an action on a contract of insurance where the plaintiff declares upon the policy as absolute owner of the insured property, alleging the loss to have been sustained by himself as owner, while the policy is shown to have been issued to him as "attor-

ney," an instruction of the court to the jury "that the fact that the plaintiff had no beneficial interest in the building or the land upon which it was situated is no defense to the action," is error, as ignoring the fundamental principles of fire insurance, that of interest in the property and indemnity to the assured in respect of that interest.

No. 294.   Submitted May 24, 1894.   Decided September 20, 1894.

HEARING on a bill of exceptions by the defendant in an action on a fire insurance policy.  *Judgment reversed, and cause remanded for a new trial.*

## STATEMENT OF THE CASE.

This was an action brought by John Vance Lewis against the Hamburg-Bremen Fire Insurance Company on a policy of insurance for $2,500, issued by the defendant to the plaintiff.   Verdict and judgment were for the plaintiff.   At the trial the following instructions to the jury were granted at the prayer of the plaintiff, over the objection of the defendant, exception being duly noted :

" 1. If the jury find from the evidence that the plaintiff, John Vance Lewis, at and before the date of the policy of insurance in suit, either in person or through the firm of Heaton & Lewis, of which he was a member, acting as his agents, had control and possession of the building insured for the owners under the power of attorney to him in evidence ; that the policy was taken out by him (either directly or through his partner, Mr. Heaton, acting for him) as such agent or attorney in possession and for the benefit of the owners, and when the policy was issued it was delivered to Mr. Heaton, one of the owners, and afterwards remained in possession of the firm of Heaton & Lewis, and that that firm held it as agents both of the plaintiff and of the owners; that the building in question was destroyed by fire on the sixth day of August, 1891, and that down to that time the plaintiff, through said firm of Heaton & Lewis, acting for him, retained possession and control of the premises for the owners and possession of said policy, then

the jury are instructed that the fact that the plaintiff had no beneficial interest in the building or the land upon which it was situated is no defense to this action.

" 2. If the jury find from the evidence that at the time the policy in suit was issued and for several years prior thereto the firm of Heiskell & McLeran were the agents of the defendant company in the city of Washington, having the powers vested in them by their commission in this case; that at said time and during said period said Heiskell & McLeran, as such agents, had in their possession blank policies of insurance of the defendant company which they were authorized to countersign and issue without consulting any other agent or any officer of the defendant company and to insure in this way property throughout the city of Washington and the District of Columbia and in Maryland near the District; that said Heiskell & McLeran, several months prior to the issuing of the policy in suit, authorized the witness Gorman to solicit insurance for the defendant company and agreed with him that for all policies issued through his instrumentality as such solicitor he should receive fifteen per cent. of the premiums paid; that during the period and at the time in question said Gorman, in pursuance of this arrangement, was in the habit of soliciting insurance for the defendant company in the city of Washington and District of Columbia and in Maryland near the District, and collecting the premiums and receiving from Heiskell & McLeran and delivering to the insured the defendant's policies of insurance; that while Gorman was acting in pursuance of this arrangement and custom he solicited from the plaintiff, through the firm of Heaton & Lewis, of which the plaintiff was a member, the policy in suit and received from the plaintiff or from said firm for him the premium of twenty-five dollars thereon, and received from said Heiskell & McLeran the policy itself and delivered the same to the plaintiff or to the firm of Heaton & Lewis for him, and accounted to said Heiskell & McLeran for said

premium, retaining only his fifteen per cent. thereon ; that neither the plaintiff nor the said firm of Heaton & Lewis, or any other person or persons acting for or on behalf of the plaintiff or the owners of the building insured, employed said Gorman in said transaction or requested him to do anything in the matter or in any way compensated him for his services, then the jury are instructed that in said transaction Gorman is to be considered as the agent of the defendant company ; and if the jury further find from the evidence that at the time said policy was applied for and issued and at the time the premium thereon was paid said Gorman knew that the building insured was not occupied as a dwelling house, and that neither the plaintiff nor said Heaton, nor any person or persons acting for or on behalf of the plaintiff, made any statement or representation to said Gorman or any other person or persons representing the defendant, to the effect that said house was or had been occupied as a dwelling house, then the jury are instructed that the defendant company is to be considered as having waived the provision of said policy as to the occupation of said building and as to the policy being rendered null and void if the building should become vacant or unoccupied."

The following prayers for instruction were asked by the defendant and refused by the court, and exception to such refusal was duly noted :

" 1. The jury are instructed upon the whole evidence that the plaintiff is not entitled to recover.

" 2. That in order to entitle the plaintiff to recover in this case it is incumbent on him to satisfy the jury from the evidence that he was the owner of the building both at the time of the issuing of the policy of insurance to him on said building and also at the time the building was destroyed by fire ; otherwise the verdict must be for the defendant.

" 3. If the jury believe from the evidence that the building upon which the insurance was effected was not the property

of the plaintiff at the time the insurance was effected, then the plaintiff is not entitled to recover in this action.

"4. If the jury believe from the evidence that the building upon which the insurance was effected was not the property of the plaintiff at the time it was destroyed by fire, then the plaintiff is not entitled to recover.

"5. If the jury believe from the evidence that Brainard H. Warner, John Joy Edson, Charles M. Heaton, and E. Southard Parker were the owners of the property at the time of the issuance of said policy and were such owners at the time said building was destroyed by fire, then said plaintiff is not entitled to recover."

The following prayer for instruction was granted at the request of the defendant:

"6. That the jury are instructed that the plaintiff was bound to read and know the contents of said policy of insurance, and he cannot say that he did not know the contents thereof until after the fire."

The following prayers submitted by the defendant were refused, and exceptions were noted:

"7. That if the jury find from the evidence that said plaintiff had a claim in said building by way of commission, then, according to the true interpretation of said policy, it was incumbent on said plaintiff to have insured the claim he had in said property and such claim specifically set forth as to its amount, and that such interest is not covered by the terms of this insurance.

"8. If the jury believe from the evidence that at the time the said policy was issued that said building was not completed, then the plaintiff is not entitled to recover.

"8½. If the jury believe from the evidence that at the time of said loss by fire said building was not completed, then the plaintiff is not entitled to recover on this policy of insurance.

"9. If the jury believe from the evidence that said building was erected to be sold and to remain vacant until sold,

then the plaintiff is not entitled to recover in this action unless the jury shall find from the evidence that the defendant assented thereto by an endorsement entered on said policy.

"10. The jury are instructed that the said A. M. Gorman, by the ninth paragraph of said policy of insurance, was not the agent of said plaintiff, unless the jury shall find from the evidence that he was appointed by said defendant its agent, and that the mere fact that said Gorman solicited insurance on behalf of himself and placed the same in defendant's company did not make him the agent of the defendant.

"11. That if the jury believe from the evidence that when said policy of insurance was issued to said plaintiff on said building that said building was vacant and unoccupied, and that fact was made known to the defendant and it issued said policy of insurance on said building, yet if the jury believe from the evidence that said building remained vacant or unoccupied from the date of issuing of said policy until said building was destroyed by fire without the assent of said defendant endorsed on said policy, the plaintiff cannot recover.

"11½. The plaintiff has not offered any preliminary proof of loss to his property, and therefore is not entitled to recover.

"12. If the jury believe from the evidence that said building was vacant or unoccupied at the time it was destroyed by fire without assent of said defendant endorsed on said policy of insurance, then the policy became void and the plaintiff cannot recover in this action.

"13. The jury are instructed that the policy of insurance in this case contains the condition that if the building shall become vacant or unoccupied without the assent of the defendant endorsed on said policy the policy shall be void; and, further, if the jury believe from the evidence that said building remained vacant or unoccupied for several months before being destroyed by fire and so remained vacant or

unoccupied until destroyed by fire, no assent of the defendant thereto being entered on said policy, then and in that case the building was vacant and unoccupied in violation of the condition of the policy, and the plaintiff is not entitled to recover in this action.

" 14. The jury are instructed that they must find from the evidence that the defendant, The Hamburg-Bremen Fire Ins. Company, employed and authorized and empowered its agents, Heiskell & McLeran, to appoint sub-agents in placing insurance on the property; otherwise their verdict must be for the defendant.

" 15. The jury are instructed that the fact that Mr. Gorman solicited insurance at the request of Heiskell & McLeran, and he placed the same with the defendant does not make, said Gorman agent of the defendant, and their verdict must be for the defendant.

" 16. The jury are instructed that they must find from the evidence that Heiskell & McLeran had knowledge that the building was vacant or unoccupied before the policy was issued, and that even notice to Mr. Gorman would not be sufficient unless the jury find that such notice was communicated to Heiskell & McLeran before the policy was issued; otherwise their verdict must be for the defendant.

" 17. The jury are instructed that they must find from the evidence that Heiskell & McLeran had knowledge from the insured that the building was vacant or unoccupied from the date of issuing of said policy, and the assent of said defendant was endorsed on said policy allowing said building to remain unoccupied or vacant; otherwise their verdict must be for the defendant."

The following was the charge of the trial court to the jury, those portions in brackets [ ] having been excepted to by the defendant:

" Gentlemen of the jury, I do not think that I can say anything to you that would be anything but a repetition of the instructions which I have granted. There is no doubt

that the house was burnt and that it was insured for twenty-five hundred dollars. It is contended that one of the conditions was that the house should be occupied, and the answer to that is that the plaintiff says that the condition was waived. Now, the company had a right to make that a condition|; yet, if the company chose to deliver this policy with the knowledge that the house was unoccupied, that would be a waiver of that condition. It is claimed here that the condition was waived by the agent of the company. Then the question here is, who was the agent? [If you find that the regular agents, Heiskell & McLeran, authorized Mr. Gorman to act for them to solicit this insurance for them and they intrusted him with the policy, and that he delivered it to the plaintiff and received the premium from him and accounted to the regular agents for that premium, the law seems to be that he should be considered the agent of the company, although a subagent employed by the agents, Heiskell & McLeran, and if the agents have knowledge of certain facts that knowledge is to be imputed to the defendant. If he knew that the house was unoccupied at the time that he delivered the insurance policy, although the policy expressly made the occupancy a condition, it was a waiver of that condition and the company would be bound notwithstanding that condition. So that the whole question is, if you find all these facts, whether you find this knowledge on the part of Gorman or not? If you do find that he had this knowledge, then you find a verdict for the plaintiff] in the sum of twenty-five hundred dollars [with interest from January 20, 1892], the date of this suit. [On the other hand, if you find that Gorman did not have the knowledge of the vacancy of the house and did not know that the condition was violated] and the condition was not waived by the company, then your verdict must be for the defendant."

The opinion of the Court will be found to contain all the material facts in the case not set forth in the prayers.

*Mr. Walter H. Acker* and *Mr. W. J. Miller* for the plaintiff in error.

*Mr. A. S. Worthington* for the defendant in error :

1. If anything is settled in the fire insurance law it is that a person who has the charge or custody of property for the owner may insure it for its full value in his own name, and upon a policy so issued sue and recover for a total loss.  All that is required is that he shall inform the company that he holds not in his own right but for the benefit of another.  This very policy provides that it shall be void, " if the exact interest of the assured in the property, whether as owner, trustee, consignee, factor, agent, mortgagee, lessee or otherwise, be not directly stated in the policy."  Accordingly, the policy states on its face that Lewis is insured as "attorney," and there is no question that the fact that he had no beneficial interest in the property whatever is no defense to the action.  1 Wood on Fire Insurance, Sec. 299 ; *Waters* v. *Assurance Co.,* 5 El. & Bl. 880 ; *Sheppard* v. *Ins. Co.,* 20 W. Va. 380 ; *Fire Assurance Association* v. *Merchants' Trans. Co.,* 66 Md. 347 ; *Pipe-lines Co.* v. *Ins. Co.,* 145 Pa. St. 360 ; *Insurance Co.* v. *Chase,* 5 Wall. 512 ; *Insurance Co.* v. *Baltimore Warehouse Co.,* 93 U. S. 527 ; *Insurance Co.* v. *Union Compress Co.,* 133 U. S. 409.  Another sufficient answer to the point is that the company having refused to pay solely on the ground that the building insured was unoccupied, it could not when sued set up another defense growing out of facts well known to it when it made such refusal.

2. The question here is whether Heiskell & McLeran had authority to appoint a subagent, and whether the arrangement which it is admitted they made with Gorman was in effect such an appointment?

On this subject, too, the law seems to be well settled.  A discordant opinion is to be met with here and there in the reports, but the great weight of authority in this country,

including, it is believed, all the recent decisions, supports the proposition that local agents of an insurance company who, as in this case, are authorized to consider applications, collect premiums, *and to issue policies without consulting any other representative of their principal,* have authority to employ clerks, solicitors and other subagents whose acts and knowledge bind the principal.

It is impossible to seriously contend that Heiskell & McLeran, the general agents of the appellant, were not authorized to appoint subagents, or that Gorman was not such a subagent. 2 Wood on Fire Insurance, Sec. 433 May on Insurance, Sec. 154; *Bodine* v. *Ins. Co.,* 51 N. Y. 123; *Carpenter* v. *Ins. Co.,* 135 N. Y. 301; *Kinney* v. *Ins. Co.,* 36 Hun. 66; *Krumm* v. *Ins. Co.,* 40 Ohio St. 228; *Moher* v. *Ins. Co.,* 13 Fed. Rep. 74; *Mullin* v. *Ins. Co.,* 58 Vt. 125; *May* v. *Assurance Co.,* 27 Fed. Rep. 260; *Insurance Co.* v. *Hartwell,* 123 Ind. 192; *Lingenfelter* v. *Ins. Co.,* 19 Mo. Ap. 265; *South Bend Toy Manufacturing Co.* v. *Ins. Co.,* 48 N. W. Rep. 311 (S. Dak. 1892); *same case,* 52 N. W. Rep. 866; *Garland* v. *Ins. Co.,* 9 Ill. Ap. 580; *Cahill* v. *Ins. Co.,* 5 Bissell, 215; *Insurance Co.* v. *Ward,* 90 Ill. 545; *Deitz* v. *Ins. Co.,* 31 W. Va. 856; *same case,* 33 W. Va. 546.

It has been held a hundred times that a clause like the ninth in a policy of insurance, even when properly worded to effect its object, has no effect upon transactions preceding the delivery of the policy to the assured. In the nature of things it can not have a retroactive effect. The contract is complete when the premium is paid and the policy delivered, and whether a person who acted in the matter prior to that time did so as the agent of the assured or the agent of the insurance company must be determined by the facts which precede the delivery of the policy and the principles of law applicable to such a state of facts. See on this subject: 2 Wood on Fire Insurance, Sec. 409; *Insurance Co.* v. *Ives,* 56 Ill. 405; *Insurance Co.* v. *Ward,* 90 Ill. 545; *Insurance Co.* v. *Myers,* 56 Miss. 496; *Kensal* v. *Ins. Asso.,* 31

Minn. 22; *Insurance Co.* v. *Loehr*, 6 Daly, 105; *Gates* v. *Ins. Co.*, 10 Hun. 490; *Smith* v. *Ins. Co.*, 47 Hun. 30; *Deitz* v. *Ins. Co.*, 33 W. Va. 536, 546; *Bassell* v. *Ins. Co.*, 2 Hughes, 531; *South Bend Toy Manufacturing Co.* v. *Ins. Co.*, 48 N. W. Rep. 311 (S. Dak. 1892); *same case* on rehearing, 52 N. W. Rep. 866.

3. The knowledge of Gorman, the company's agent, at the time the policy in suit was issued, that the building insured was unoccupied was a waiver by the company of the provisions of the policy on that subject. *Insurance Co.* v. *Wilkenson*, 13 Wall. 222; *Insurance Co.* v. *Mahone*, 21 Wall. 151; *Insurance Co.* v. *Baker*, 94 U. S. 610; Wood on Fire Insurance, Secs. 901 to 914; 22 Am. St. Rep. 883, note; *Bodine* v. *Ins. Co.*, 51 N. Y. 123; *Mullen* v. *Ins. Co.*, 58 Vt. 125; *May* v. *Ins. Co.*, 27 Fed. Rep. 260; *Insurance Co.* v. *Hartwell*, 123 Ind. 192; *Cone* v. *Ins. Co.*, 3 Thompson & Cook, 36, affirmed in 60 N. Y. 619; *Insurance Co.* v. *Ives*, 56 Ill. 405; *Insurance Co.* v. *Myers*, 55 Miss. 496; *South Bend Toy Manufacturing Co.* v. *Ins. Co.* 48 N. W. Rep. 311, (S. Dak. 1892); *same case*, 52 N. W. Rep. 866; *Insurance Co.* v. *Carey*, 83 Ill. 454; *Palmer* v. *Ins. Co.*, 44 Wis. 201; *Insurance Co.* v. *Krainch*, 36 Mich. 289; *Williams* v. *Ins. Co.*, 50 Iowa, 561; *Bretz* v. *Ins. Co.*, 76 Mich. 338; *Menk* v. *Ins. Co.*, 76 Cal. 53; *Fallette* v. *Accident Association*, 107 N. C. 240; *same case*, 110 N. C. 377; *Hamilton* v. *Ins. Co.*, 57 N. W. Rep. 738 (Mich. Sup. Ct. 1894); *Insurance Co.* v. *Malevinski*, 24 S. W. Rep. 804 (Texas, 1894); *Garland* v. *Ins. Co.*, 9 Ill. Ap., 571.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This action is upon a policy of insurance against fire. The plaintiff sues in his own individual character as owner of the property insured, and alleges his interest in the property to be as much and more than the amount of the insurance. He seeks to recover, and succeeded in recovering, in

his own name and character as owner, the full amount of the insurance stipulated for in the policy.

The policy bears date the 5th day of June, 1890, to run for five years from its date, and was issued to the plaintiff under the following state of facts, as shown in the proof:

Several joint owners of a piece or parcel of land unimproved, situate in what is known as Takoma Park (that part of which containing the piece of land referred to being on the Maryland side of the division line between the District of Columbia and the State of Maryland, as matter of convenience to themselves, made, on the 3d of March, 1890, a power of attorney to the plaintiff in this case, whereby they authorized him to sell, lease, mortgage and convey the property, and to collect all sums of money which should be coming to them on account of any such sale, mortgage, lease, or otherwise, in connection with the property. At the time this power of attorney was made, Lewis, the plaintiff, was in partnership with Charles M. Heaton, Jr., one of the joint owners of the land, under the firm name of Heaton & Lewis, as real estate agents and brokers in the city of Washington. From the date of the power of attorney to the time of bringing this suit, this partnership or firm had control and management of the property, the subject of the power, for the benefit of the owners. Soon after the date of the power, this firm commenced the erection of a dwelling house upon the land, with a view to the sale of the same, and while in course of construction a builder's risk was obtained from the defendant company, through its agents in Washington, which was issued to "J. Vance Lewis, attorney," and ran for three months. At the end of the three months, the policy in suit was issued also to "J. Vance Lewis, attorney," upon the same building, this policy reciting that the building was "occupied as a dwelling." At the date of this last policy, June 5, 1890, the building was finished, but it had not been furnished with mantels, gas fixtures or furnaces. The house was built for sale, but was

never sold, and it was totally destroyed by fire on the 6th of August, 1891. The house had never been occupied either before or after the date of the policy; and the defendant company, through its local agents in Washington, refused to pay the loss, upon the ground that the risk had never attached under the policy.

Heiskell & McLeran were the duly authorized agents of the defendant company for the city of Washington and its vicinity. The commission or power of attorney under which they acted is dated the 12th of December, 1889, and recites and declares " that Heiskell & McLeran, of Washington, in the District of Columbia, have been duly constituted and appointed agents of the Hamburg-Bremen Fire Insurance Company of Hamburg, Germany, during the pleasure of said company, with full power to receive proposals for insurance against loss or damage by fire in Washington and vicinity; to receive moneys, and to countersign, issue, renew and consent to the transfer of policies of insurance of said company; subject to such rules and regulations as are or may be adopted, and to such printed or written instructions as may from time to time be given by said company."

This company has a principal branch or associate managing office located in the city of New York, to which local agencies report and account.

The declaration is in the usual form and contains three counts. The suit is in the personal right of the plaintiff, without any reference whatever to his character of attorney or agent, and he alleges that he had an insurable interest in the property to an amount exceeding $2,500, the amount of the insurance, and that, by reason of the destruction of the building by fire, he has sustained an immediate loss greater than that amount. There is no reference made in either count of the declaration to the fact that the building was insured as "occupied as a dwelling."

The defendant pleaded several pleas, which may be briefly stated thus: That the defendant did not promise as alleged;

that it was not indebted as alleged; that the plaintiff had no insurable interest; and that the policy was void because of the false representation that the building was occupied. Issue was joined on these pleas.

At the trial the plaintiff offered in evidence the policy, to which the defendant objected, upon the ground of variance; but the court allowed the policy to be read to the jury, and an exception was taken.

The question thus presented is, whether the policy is admissible to support the allegations made in the declaration, in either count thereof, as to the interest of the plaintiff in the property insured? And this question may be considered in connection with the question presented by the defendant's first, second, third and fourth prayers for instruction, made to the court upon the whole evidence, to the effect that if the plaintiff was not the owner of the building at the date of the policy and at the time of the loss by fire, the plaintiff could not recover. These prayers the court refused to grant, and instructed the jury that the plaintiff could recover to the full amount of the insurance, notwithstanding he had neither legal nor beneficial estate or interest in the property insured.

The policy of insurance declared on is not under seal; and the general principle is that a mere agent or attorney, with whom a simple contract is expressed to be made on behalf of another, and who has no direct beneficial interest in the subject-matter of the contract, cannot support an action thereon. 1 Chitty Pl. 9, and cases cited. And it is said that where a policy is effected by a person named as *agent generally*, as in the policy before us, it may be shown whose interest was intended to be covered by the policy, but the agent cannot aver an interest in himself, as has been done in this case. 2 Duer. Ins. 40, Sec. 27; 1 Chitty Pl. 9, note *n*. Such averment is repugnant to the terms of the policy.

In this case, the policy issued to the plaintiff as attorney,

generally; and it is conceded, and the court instructed the jury upon the assumption, that the plaintiff had no interest, legal or beneficial, in the subject-matter of the insurance; though the plaintiff has averred in his declaration that he had, both at the time of insurance and at the time of loss, an individual interest in the property larger than the amount insured. There is no disclosure whatever in the declaration of any interest in any third person; but the policy is declared on as if the plaintiff was the true and real owner of the property.

It is certainly well settled, that the assured, to entitle him to recover for loss, must aver and prove an insurable interest in the property, the subject matter of the insurance, both at the time of the contract made and at the time of loss. Or, as said by the Supreme Court of the United States, in the case of *Insurance Co.* v. *Chase,* 5 Wall. 509, 512: "A contract of insurance is intended to indemnify one who is insured against an uncertain event, which, if it occurs, will cause him loss or damage. The assured must, therefore, have an interest in the property insured; otherwise, there is a temptation to destroy it, which sound policy condemns." It is not necessary, however, says Marshall, in his Treatise on Insurance, page 789 (quoted with approval by the Supreme Court in the cases of *Insurance Co.* v. *Lawrence,* 2 Pet. 25, 49, and *Carpenter* v. *Ins. Co.,* 16 Pet. 505), "in order to constitute an insurable interest, that the insured shall in every instance have an absolute and unqualified property in the effects insured. A trustee, a mortgagee, a reversioner, a factor, an agent with the custody of the goods to be sold upon commission, may insure; but with this caution, that the nature of the property be distinctly specified." There is, and can be, no question of the right of bailees, such as factors, carriers, wharfingers, warehousemen, commission merchants, and many others having possession of goods, and being responsible therefor, to insure them in their own name or in that of the principal; and if

they insure in their own name only, they may, in case of loss, recover the whole amount of the insurance from the insurers, and the surplus beyond their own interest will be a resulting trust for the benefit of their principals. *Insurance Co.* v. *Balto. Warehouse Co.*, 93 U. S. 527, 543 ; *Insurance Co.* v. *Union Compress Co.*, 133 U. S. 387, 409. But, in all such cases, there is a special property or interest in the assured upon which the contract of insurance is based. And so, a trustee, in whom is vested a title to real estate, whether legal or equitable, has an insurable interest, and may insure and recover in his own name for the benefit of the *cestui que trusts* represented by him, and for whom he holds the estate. *Insurance Co.* v. *Chase, supra ; Lerow* v. *Wilmarth*, 9 Allen, 382. And even an agent without interest in the property, with whom a contract of insurance has been made, may sue upon such contract in his own name; but, in such case, the beneficial interest of the principal must be averred and proved as the foundation of the right to recover. Interest must be averred as well as proved ; and in the case of an agent without interest in himself, it cannot be consistently or truthfully averred that the plaintiff had an insurable interest, and that he had sustained a loss by the event insured against; for having no interest he could not sustain a loss, in the legal sense of the term. This essential averment of interest, however, may be supplied by the proper averment of interest in the principal. This was so held in the House of Lords, in the celebrated and much. considered case of *Lucena* v. *Crawford*, 2 New Rep., 5 Bos- & Pul. 307, 317, 324, 327, 328, 329; and *same case* on second appeal, 1 Taunt., 325, 335 ; and in the case of *Routh* v. *Thompson*, 13 East, 274. As a general rule, on open poli- cies, the extent of the interest of the assured is the limit of the recovery ; and the policy in this case, by a clause in its second condition declares that the company shall not be liable for any loss or damage sustained, " for property held in trust, or on commission, except to the extent of the

4 Ct. App.—6

assured's responsibility therefor, and of his *actual interest* in such property."

The defect in the declaration in this case might, possibly, be cured by amendment. But there are other questions made in the case that must be considered, which affect the final result of the case more seriously.

The policy was obtained from Heiskell & McLeran, the general agents of the defendant company, by one A. M. Gorman, of the firm of B. F. Gilbert & Co., real estate agents or brokers, doing business in the city of Washington, and, at the same time, acting as solicitors of fire insurance risks. In thus acting in soliciting insurance risks, the members of the firm did not profess to act as agents of any particular insurance company or agency in the city, but had the right to take the business obtained by them to any company or agency that would accept their proposals for risks. They were, therefore, independent solicitors of fire insurance business.

It appears that for several years prior to the date of the policy sued on there existed in Washington an organization of the local fire insurance companies and of the agents of resident and non-resident fire insurance companies, called the "Fire Underwriters of the District of Columbia;" and the firm of Heiskell & McLeran were among the members of such association. One object of the association was to regulate the commission which fire insurance companies and agents in Washington should pay to others for bringing them insurance business; and it fixed the rate of commission to parties bringing the business at 15 per cent. of the general agent's commission. Such associations exist in all the principal cities of the country, and their existence is well known to all the larger and more important fire insurance companies doing business in those cities, including the defendant company. But it is manifest the object of such association is not to appoint as agents and confer authority upon those who may bring business to the office,

but to regulate the matter of compensation among the members of the association.

Some time before the present policy had been obtained, Gorman had arranged with Heiskell & McLeran for a special rate of insurance for risks that he might obtain on property in Takoma Park, a suburban village of the city of Washington; but in so acting he was a mere solicitor of insurance, and conducted an independent business, and could take the applications for insurance that he solicited (unless restricted by the instruction of the applicant) to any insurance office or agency that he thought proper, his especial purpose being to obtain insurance at the best rates to the insured that could be agreed upon. He had no power to make contracts of insurance for the insurer or to underwrite or issue policies or to fix rates of insurance; in fact, he had no authority in the making of the contract other than in submitting the proposal for approval or disapproval of the local agency of the company; and if the proposal was approved and accepted by the agency, a policy was issued, and intrusted to the solicitor to be delivered to the insured, with power to receive the premium, and deduct therefrom the commission allowed, according to the rates fixed by the Association of Underwriters. The plaintiff states in his testimony that Gorman was not employed by Heiskell & McLeran, and Gorman, as a witness, states that he was not employed by them, but that he acted as an independent solicitor, on the terms prescribed by the association of " Fire Underwriters of the District of Columbia." The course of proceeding was, according to the undisputed evidence, that Heiskell & McLeran would write insurance for Gorman as for any other broker or solicitor; and any acceptable risk that he offered was taken by them, on his statements, and the contract was based upon his representation, and the policy was written up and executed, and delivered to him, and he delivered it to the assured, and thereupon received the premium and accounted for the

same, less the 15 per cent. of the agent's commission. That was the course of proceeding in obtaining the policy sued on in this case. Mr. Heaton, of the firm of Heaton & Lewis, and one of the owners of the property insured, was the party from whom Gorman solicited the insurance, and to whom the policy was delivered, upon the payment of the premium. It is conceded that both Lewis, the plaintiff, and Heaton knew, at the time of taking the insurance, that the house was not occupied; and Gorman swears that he did not know that the house was unoccupied; and it is not claimed or pretended that either Heiskell or McLeran had knowledge upon the subject, and there is no evidence to charge them with knowledge the one way or the other. They swear that they had no knowledge upon the subject. It is claimed by the plaintiff, however, that Gorman must have known that the house was unoccupied because he owned property in the neighborhood, and was passing along the road repeatedly very near by the house, both before and after the issuing of the policy. And the court below holding that Gorman was the agent of the defendant, and acting upon the principle that the knowledge of the agent is the knowledge of the principal, instructed the jury that if he, Gorman, knew that the house was unoccupied at the time that he delivered the insurance policy, although the policy expressly made the occupancy a condition, it was a waiver of that condition, and the company would be bound, notwithstanding the condition; that if the jury found that Gorman had such knowledge they should find a verdict for the plaintiff for the full amount of the policy, with interest. But, if they should find that Gorman did not have such knowledge of the vacancy of the house, and did not know that the condition was violated, and the condition was not waived by the company, the verdict should be for the defendant. This instruction was excepted to by the defendant, and the question is, whether, upon a fair

construction of the policy and its conditions, that instruction was proper.

As we have already seen, the policy was issued to the plaintiff as *attorney* and insured him against loss by fire on his two-story frame building, *occupied as a dwelling;* and the policy declares that it shall be subject to the terms and conditions printed thereon, which form a part of the contract. And it is further declared that the policy shall not be valid unless countersigned by the duly authorized agents of the company, and no alterations or waiver of any of said terms or conditions shall bind the company, unless made in writing thereon by the officer or agent duly authorized thereto, and signed by him.

Among the conditions referred to, under which the insurance was granted, are these:

" 1. The application and statements of the assured concerning the risk are the basis of this contract, and any misrepresentations or any omission to make known any material fact concerning the risk, shall vitiate this policy . . . or if the above mentioned premises shall be occupied or used so as to increase the risk, or shall become vacant or unoccupied, &c., without the assent of the company indorsed on the policy, then the policy shall become void; . . . or if the exact interest of the assured in the property, whether as owner, trustee, consignee, factor, agent, mortgagee, lessee or otherwise, be not truly stated in the policy, then and in every such case this policy shall be void." And in the ninth condition it is declared that " it is a part of this contract that any person other than the assured, except the authorized agent of this company, who may have procured this insurance from this company, shall be deemed to be the agent of the assured named in this policy, and not of this company, under any circumstances whatever."

These conditions must all receive a fair and reasonable interpretation, according to their terms and obvious import.

For, as has been well said, the insured has no right to complain, for he assents to comply with all the stipulations on his side, in order to entitle himself to the benefit of the contract; and neither upon reason or principle has he any right to ask the court to dispense with the performance of his own part of the agreement, and yet to bind the other party to obligations which, but for those stipulations, would not have been entered into. *Carpenter* v. *Ins. Co.*, 16 Pet. 511. Or, as said in a very recent case, "For a comparatively small consideration the insurer undertakes to guarantee the insured against loss or damage, upon the terms and conditions agreed upon and upon no other, and when called upon to pay, in case of loss, the insurer, therefore, may justly insist upon the fulfillment of these terms. If the insured cannot bring himself within the conditions of the policy, he is not entitled to recover for the loss. The terms of the policy constitute the measure of the insurer's liability, and in order to recover, the assured must show himself within those terms ; and if it appears that the contract has been terminated by the violation on the part of the assured of its conditions, then there can be no right of recovery. The compliance of the assured with the terms of the contract is a condition precedent to the right to recover." *Insurance Co.* v. *Coos County*, 151 U. S. 462.

In this case it is clearly shown, indeed not controverted, that the rate of insurance upon unoccupied buildings is different and greater than upon occupied dwellings, and this for obvious reasons ; and the proof, on the part of the defendant, is clear to the point that the risk would not have been taken by the agents of the defendant at the rate stated in the policy, if it had been known to them that the building was unoccupied. This difficulty in the plaintiff's case is sought to be obviated or removed, upon the theory that Gorman was the agent of the defendant company, and that he had knowledge of the fact that the building was unoccupied, and that his knowledge was the knowledge of

the company. But, as the facts of the case show, Gorman was an independent solicitor, not bound to serve the general agents of the defendant, any more than he was to serve any other insurance company or general agency, doing business in this District. The general agents of the defendant had agreed to take the business solicited by Gorman in Takoma Park, at a certain rate, but it was all subject to their approval. He had no authority from these general agents to make contracts of insurance, and the only authority that he had to bind the company as subagent was, after the proposals for insurance had been accepted by the general agents, to deliver the policies issued by them to the parties from whom he solicited the applications, and to receive the premiums, and pay the same over to the general agents, after deducting the compensation allowed by the regulations of the Association of Underwriters of the District. Surely, the knowledge of a subagent, with such very limited and restricted powers, ought not to be taken as the knowledge of the defendant, in respect to an important fact upon which the policy is based, and in regard to which it was the duty of the plaintiff to make full disclosure as preliminary to accepting the policy.

It is conceded, upon the theory upon which the jury were instructed, that if Gorman had not knowledge of the fact that the building was unoccupied, the defendant would not be bound. It is also conceded that the plaintiff had knowledge that the building was unoccupied; and if Gorman represented to the general agents of the company that the building was occupied, and the agents, acting upon that representation, issued the policy to the plaintiff, it was a fraud upon the defendant; and as the plaintiff and Heaton, his partner and part owner of the property, knew that the building was unoccupied, it would be a participation in the fraud by them, to accept the policy based upon the fact stated therein that the building was occupied. It is a principle well settled that, in the absence of actual fraud,

misrepresentation or concealment, the assured must be held to have knowledge of the contents of the policy accepted by him. *Morrison* v. *Ins. Co.*, 69 Texas, 353; *Cleaver* v. *Ins. Co.*, 71 Mich. 414; and there is no pretense in this case that there was any sufficient reason for the plaintiff not knowing the contents of the policy. The contract of insurance, under the facts of this case, was not complete or binding until the policy was actually delivered to and accepted by the plaintiff; and it was his duty to know the contents of the policy before accepting it, and paying the premium thereon. And this being so, even putting Gorman upon the footing of an agent of the company, the principle is settled, that if the agent be guilty of fraud upon the insurers, and the assured knowingly aids in its perpetration, or, by neglecting to read the application or the policy, suffers it to be perpetrated, he is guilty of participating in the fraud, and must suffer the consequences. *Ryan* v. *Ins. Co.*, 41 Conn. 168; May on Ins. 163. Insuring the building as "occupied as a dwelling," was a warranty that the building was so occupied, though not that it should remain so in the future, except as it may be affected by express conditions. *O'Niel* v. *Ins. Co.*, 3 Comst. 122; *Wall* v. *Ins. Co.*, 3 Seld. 370. And the plaintiff, knowing the falsity of the affirmation in the policy, cannot avoid the legal effect of such falsity, by showing that Gorman, the solicitor, must have had knowledge of the fact that the building was not occupied.

But apart from this question of waiver, as the effect of Gorman's knowledge, we think it clear that Gorman was not such agent of the defendant company as that contemplated by the ninth condition of the policy, and consequently his knowledge of the non-occupancy of the house does not affect the defendant. He was not an agent authorized by the company to issue or countersign policies, or to make contracts of insurance, but that power was confided exclusively to the local agents, Heiskell & McLeran. It was

the manifest object of the condition to which we have referred, to exclude the knowledge or representation of parties occupying the position of Gorman; if not, it is difficult to determine to what parties it does apply and exclude.  According to the settled construction of that condition, the knowledge or information of the party to which it applies, " pending negotiation for insurance, touching the subject-matter of the contract, is to be deemed the knowledge or information of the insured.  When the contract was consummated by the delivery of the policy, he ceased to be the agent of the insured, if his employment was solely to procure the insurance."  *Grace* v. *Ins. Co.*, 109 U. S. 278, 281.

There is, however, another question in the case proper to be noticed, raised by the first prayer of the defendant for instruction, and that is, as to the effect of the clause in the first condition in the policy, which declares that "if the *exact interest of the assured in the property,* whether as owner, trustee, consignee, factor, agent, mortgagee, lessee, or otherwise, *be not truly stated* in the policy, then, and in every such case, this policy shall be void."  It is true, the policy was issued to the plaintiff as attorney simply, but for what purpose as attorney—whether to execute a conveyance of the land, to rent or sell it—is not stated; and therefore no interest is disclosed.  The plaintiff declares upon the policy as absolute owner of the property insured, without reference to his character of attorney, alleging the loss to have been sustained by himself as owner; and the court instructed the jury " that the fact that the plaintiff had no beneficial interest in the building or the land upon which it was situated is no defense to this action."  This we think was error.  Such a proposition ignores the fundamental principles of fire insurance, that of interest in the property and indemnity to the assured in respect of that interest, and would allow any person to insure the property of another in which he had no interest, and recover to the full amount of the in-

surance—a thing contrary to public policy, and which is denounced by all the authorities.

We must reverse the judgment and remand the cause for a new trial; and it is so ordered.

*Judgment reversed.*